PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 09-4446

JAMES WASHINGTON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson Everett Legg, Chief District Judge.
(1:08-cr-00074-BEL-1)

Argued: October 26, 2010

Decided: January 10, 2011

Before WILKINSON and MOTZ, Circuit Judges, and
Damon J. KEITH, Senior Circuit Judge of the United States
Court of Appeals for the Sixth Circuit,
sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Motz and Senior Judge Keith joined.

## COUNSEL

**ARGUED**: Meghan Suzanne Skelton, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for

Appellant. Debra Lynn Dwyer, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

---

## OPINION

WILKINSON, Circuit Judge:

James Washington pled guilty to possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). The Armed Career Criminal Act ("ACCA") provides fifteen-year minimum sentences for § 922(g) violators with three prior convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). Washington admits two such convictions, but appeals the district court's finding that a November 1999 Maryland conviction for possession with intent to distribute a controlled substance counts as his third.

Maryland's possession with intent to distribute offense is ambiguous for ACCA purposes: some underlying controlled substances trigger a sufficiently high maximum sentence to qualify as ACCA predicates, but others do not. As a result, the sentencing court had to find facts about Washington's November 1999 conviction. It found by a preponderance of the evidence that Washington's conviction qualified as an ACCA predicate because it involved cocaine.

Washington throws up numerous objections to what in reality is nothing more than straightforward trial court fact-finding within the framework of *Shepard v. United States*, 544 U.S. 13 (2005). Washington contends, however, that *Shepard*, as well as the Sixth Amendment and due process, require proof beyond a reasonable doubt in making such determinations. But *Shepard* defines the universe of records

the government may use to demonstrate facts about prior convictions, not the standard of proof required to prove them, and our precedents bar Washington's broader claims. Because the district court properly relied on *Shepard*-approved sources in making its factual determination that Washington's November 1999 conviction qualified as an ACCA predicate, we affirm.

I.

On November 17, 2007, a car carrying two Baltimore Police Department officers stopped at a traffic light. The officers noticed that Washington, the driver of the car next to theirs, was drinking malt liquor. One of the officers approached Washington's car to speak with him, but he quickly drove away. The officers caught up with him at another stoplight, but when one yelled "police" he sped off again, this time by putting his car in reverse and driving backwards into oncoming traffic. Washington spun his car around, raced forward, and ultimately crashed into a car stopped at another stoplight. The pursuing officers saw that Washington —who by now had exited his damaged vehicle and was running away—was holding a gun. They caught up with Washington and finally subdued him, recovering his loaded 9 mm handgun.

As a result of this incident, Washington pled guilty to violating 18 U.S.C. § 922(g)(1), which prohibits anyone convicted of a crime punishable by more than one year's imprisonment from possessing firearms or ammunition. Under the ACCA, those who violate § 922(g) and have three previous convictions for "violent felon[ies]" or "serious drug offense[s]" must receive at least a fifteen-year sentence. 18 U.S.C. § 924(e)(1). Washington's Pre-Sentence Report described six possibly qualifying convictions, and he accepted that two of these — June 1999 and November 2004 convictions for possessing narcotics with intent to manufacture or distribute — counted. But he argued the government could not sufficiently demonstrate a third.

To that end, the government introduced evidence regarding Washington's April 1998 convictions for second-degree assault and resisting arrest, his June 2003 conviction for second-degree assault, and his November 1999 conviction for possession with intent to manufacture or distribute. The district court addressed only Washington's November 1999 conviction, finding that the government had proven by a preponderance of the evidence that this conviction qualified as an ACCA predicate. In a straightforward exercise of its fact-finding responsibilities, the district court noted that the government's documents were "not a model of clarity by any stretch of the word" but said as follows:

> It is clear from the Circuit Court for Baltimore City documentation the docket entries that there was a conviction on Count 1 charging possession with intent to distribute apparently mislabeled as heroin although cocaine was charged. The rule in federal court is that, to be satisfactory, an indictment need not charge the precise drug, but need only charge a proscribed narcotic. So here it's clear that there was a felony conviction for possession with intent to distribute a proscribed narcotic, which means that the predicate offenses are satisfied, and Mr. Washington is properly denominated as an armed career criminal.

Accordingly, the district court sentenced Washington to 180 months, a small downward departure from his enhanced Guidelines range of 188 to 235 months. Absent ACCA and career offender enhancements, Washington would have faced a Guidelines sentencing range of 70 to 87 months and, under 18 U.S.C. § 924(a)(2), a statutory maximum of 120 months.

## II.

Washington contends that the district court erred in applying a preponderance of the evidence standard in evaluating whether his November 1999 conviction triggered his ACCA

sentence. To assess this argument, we begin by describing the ACCA's definition of a "serious drug offense," the Maryland law at issue in Washington's November 1999 conviction, and the judicial process used to determine whether that conviction qualifies.

A.

As it relates to Washington's case, the ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). At the time of Washington's conviction, Maryland law included a generic offense of possession of a controlled dangerous substance with intent to distribute:

> [I]t is unlawful for any person . . . [t]o manufacture, distribute, or dispense, or to possess a controlled dangerous substance in sufficient quantity to reasonably indicate . . . an intent to manufacture, distribute, or dispense, a controlled dangerous substance . . . ."

Md. Code Ann. art. 27, § 286(a)(1) (West 1999) (subsection divisions omitted). The penalties for violating this provision depended on the controlled dangerous substance at issue. If the substance was a Schedule I or II narcotic such as cocaine or heroin, a twenty-year maximum applied. Md. Code Ann. art. 27, § 286(b)(1); *see also id.* § 279(a)(3)(b)(12) (heroin); § 279(b)(3)(a)(4) (cocaine). However, for certain other drugs, such as marijuana, only a five-year maximum applied. Md. Code Ann. art. 27, § 286(b)(3).[1]

---

[1]The relevant provisions of Maryland's criminal code have since been relocated and revised, but without substantive change. *See* Md. Code Ann., Crim. Law § 5-607(a) (LexisNexis 2002) (general five-year maximum sentence); § 5-608(a) (twenty-year maximum for "Schedule I or

It is thus impossible to tell whether a defendant's conviction qualifies as an ACCA predicate from the statutory elements alone: cocaine and heroin convictions do qualify, but marijuana convictions do not. As a result, sentencing courts addressing whether Maryland possession with intent to distribute offenses qualify under the ACCA have to go beyond the preferred categorical approach, which looks only to the offense's statutory elements. *See Taylor v. United States*, 495 U.S. 575, 600–602 (1990). Instead, they must use the modified categorical approach, which looks to a larger but still circumscribed range of documents to determine the nature of a conviction for ACCA purposes. *See Shepard*, 544 U.S. at 26; *United States v. Rivers*, 595 F.3d 558, 562–63 (4th Cir. 2010) (noting that the modified categorical approach is appropriate when "different types of behavior satisfy an element of the offense and the proscribed behaviors constitute at least two separate crimes for ACCA purposes"); *United States v. Brandon*, 247 F.3d 186, 189 n.1 (4th Cir. 2001) (applying the modified categorical approach to ambiguous serious drug offenses). Here, the district court had to determine whether Washington's November 1999 conviction involved a narcotic triggering the ACCA, or instead some other, non-qualifying drug.

B.

Washington argues that this kind of judicial fact-finding can only take place under a heightened standard. Most creatively, he argues that *Shepard* itself requires the heightened standard. He notes that *Shepard* instructs courts applying the

Schedule II narcotic drug[s]"). We thus need not decide whether for ACCA purposes a sentencing court should apply the law at the time of the prior conviction or the law at the time of sentencing. *See United States v. McNeill*, 598 F.3d 161, 164–66 (4th Cir. 2010) (applying the sentencing law at the time of the prior conviction because the revising statute provided that the revisions would not apply to crimes committed before its effective date).

modified categorical approach to use only "conclusive records," *Shepard*, 544 U.S. at 21, ones which "approach the certainty" of those used in determining whether a conviction qualifies under the categorical approach, *id.* at 23. "Conclusive" and "certain," he insists, are adjectives that do not properly describe a mere preponderance test, but instead require something more.

To begin with, our precedent does not run in Washington's favor. In *United States v. Harcum*, 587 F.3d 219, 222–25 (4th Cir. 2009), this court discussed *Shepard* and reiterated the preponderance standard in a post-*Shepard* modified categorical case.

We think the standard *Harcum* applied was the correct one. *Harcum* did not discuss *Shepard*, however, in the standard of proof context, and on that point we think Washington's argument misreads *Shepard* and ignores the issue it actually addressed. The government there sought to prove that Shepard's prior plea conviction qualified him for an ACCA enhancement. *See Shepard*, 544 U.S. at 17. Because his Massachusetts burglary offense may or may not have qualified under the ACCA depending on its nature, the Court had to extend *Taylor*'s brief description of the modified categorical approach from the trial context to the plea context, *see id.* at 19–21, determining whether police reports and complaint applications sufficiently resembled the charging papers and jury instructions whose use was specifically approved in *Taylor*, *see id.* at 17–21 (citing *Taylor*, 495 U.S. at 602).

Viewed in context, the true meaning of the sound bites about "certainty" and "conclusive[ness]" that Washington extracts from *Shepard* becomes clear: they define the universe of records the government may use in proving the nature of a prior conviction, not the burden of proof it faces in making its showing from those records. *See United States v. Palomino Garcia*, 606 F.3d 1317, 1337 (11th Cir. 2010) ("Under [the modified categorical] approach, a court may determine . . . the

basis for the conviction by consulting a narrow universe of '*Shepard* documents' . . . ."). Accordingly, *Shepard*'s "conclusive records" language occurs as part of its rejection of the government's request to use records from courts other than the court of conviction and records generated prior to charging. *See Shepard*, 544 U.S. at 21.

Similarly, *Shepard*'s "approach[ ] the certainty" language occurs during another discussion of records, one in which the Court reasoned that accepting items like police reports would undermine *Taylor*'s instruction to use a process as close to the pure categorical approach as possible. *See id.* at 22–23. In keeping with this focus on court records, the Court's subsequent references to *Shepard* speak to the universe of records to be consulted: "The 'modified categorical approach' . . . permits a court to determine . . . the basis for the conviction by consulting the trial record — including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010) (citing *Shepard*, 544 U.S. at 26). In other words, *Shepard* simply does not mean what Washington says it does.

Moreover, if Washington's interpretation were correct, *Shepard* would be curiously silent about its important reworking of the law. *Shepard*'s majority opinion never mentions a preponderance standard, a heightened standard, or any of the cases that applying a heightened standard would have overruled. *See, e.g.*, *United States v. Kriens*, 270 F.3d 597, 604–05 (8th Cir. 2001) (applying a preponderance standard in a modified categorical case); *United States v. Hill*, 53 F.3d 1151, 1153–55 (10th Cir. 1995) (en banc) (same). It would be strange for the Supreme Court to change the law so profoundly yet so quietly, and we should not strain to find that it has done so where there are more plausible interpretations of its handiwork.

Finally, Washington's interpretation ignores one of the animating purposes of the *Taylor*/*Shepard* line: the desire to avoid extensive litigation about prior convictions at sentencing. *Taylor* noted the "practical difficulties" of allowing recourse to trial transcripts and witness testimony at a sentencing hearing, *Taylor*, 495 U.S. at 601, and *Shepard* referred to *Taylor*'s conclusion as a "pragmatic" one, aimed in part at "avoid[ing] evidentiary disputes," *Shepard*, 544 U.S. at 20, 23 n.4. Given this purpose, it is again more plausible to read *Shepard*'s statements about certainty and conclusiveness as referring to a canonical set of records that will prevent sentencing from devolving into a retrial of the defendant's prior convictions.

We thus disagree that *Shepard* requires a departure from the preponderance standard. We also note that we are not alone. Perhaps in recognition of *Shepard*'s context, its silence about a heightened standard, and its desire to avoid minitrials, our sister circuits have explicitly or implicitly adopted this same reading of *Shepard* by applying a preponderance standard in modified categorical cases. *See, e.g.*, *United States v. Forrest*, 611 F.3d 908, 913 (8th Cir. 2010); *United States v. Martin*, 526 F.3d 926 (6th Cir. 2008); *United States v. Rosa*, 507 F.3d 142, 151 (2d Cir. 2007); *United States v. Dowd*, 451 F.3d 1244, 1253 (11th Cir. 2006).

## C.

Washington contends also that the Sixth Amendment and the Due Process Clause require at the very least a reasonable doubt standard where factual findings about the nature of a prior conviction are involved. This view, once again, is problematic on many fronts. The preponderance standard is the one traditionally applied in sentencing determinations, and we have consistently declined invitations to create exceptions. *See Harcum*, 587 F.3d at 222 (applying the preponderance standard in the modified categorical approach context); *United States v. Grubbs*, 585 F.3d 793, 799-803 (4th Cir.

2009) (applying a preponderance standard to judicial fact-finding that increases the advisory Guidelines sentencing range). And rightly so: *Shepard* itself recognized a role for judicial fact-finding under the modified categorical approach, *see Shepard*, 544 U.S. at 20–21, confined the sources of that fact-finding to a circumscribed set of judicial documents, *see id.* at 26, and never once indicated that fact-finding utilizing approved judicial sources was constitutionally required to be conducted under something other than the ordinary fact-finding standards and burdens of proof.

Moreover, *Shepard*'s restrictions mitigate any Sixth Amendment problems that lurk in the modified categorical approach and judicial fact-finding by a preponderance of the evidence. Under *Shepard*'s document limitations, courts cannot look to sources that would allow them to "rely[ ] on facts neither inherent in the conviction nor admitted by the defendant." *United States v. Alston*, 611 F.3d 219, 226 (4th Cir. 2010); *see also United States v. Bethea*, 603 F.3d 254, 259 (4th Cir. 2010) (looking at whether "charging documents and any judicial records 'necessarily' show" the defendant's conviction qualified under the ACCA (citing *Shepard*, 544 U.S. at 20–21)). As a result, any ACCA enhancement stems only from information about the nature of a conviction that has passed through Sixth Amendment filters: charging documents and jury instructions that indicate what the government must have proved, factual findings to which the defendant consented, and so forth. *See Alston*, 611 F.3d at 226 (*Shepard*'s limitations render the modified categorical approach "consistent with the Sixth Amendment" by limiting fact-finding to the defendant's admissions and to facts "inherent in" a prior conviction). There is simply no Sixth Amendment or due process violation in judges finding facts about the nature of a prior conviction by a preponderance of the evidence, provided, however, they stay within *Shepard*'s bounds.

### III.

Washington next asserts that the district court erred in finding that the government met its burden of proof under the pre-

ponderance standard. He argues that inconsistencies in the records, as well as *Shepard*'s limitations on which records could properly be considered, prove that the government could not reliably make its case. We review legal issues such as whether a defendant's previous conviction counted as an ACCA predicate de novo, *see Harcum*, 587 F.3d at 222, and we review factual findings for clear error, *see Rivers*, 595 F.3d at 560–61; *United States v. Wardrick*, 350 F.3d 446, 451 (4th Cir. 2003). We begin by summarizing the evidence introduced.

A.

The government introduced a number of records designed to prove that Washington had a November 1999 conviction for possession with intent to manufacture or distribute and that this conviction qualified under the ACCA. A "charge summary" from the District Court for Baltimore City ("District Court") listed two offenses, "CDS:POSSESS-NOT MARIHUANA" and "CDS:P W/I DIST: NARC," the first with a four-year maximum penalty and the second with a twenty-year maximum penalty. The Statement of Probable Cause, submitted with the Application for Statement of Charges filed with the District Court, alleged that officers observed Washington selling drugs and apprehended him with thirty "rocks" of crack cocaine. Dated "04/16/1999" and including Case and Tracking Numbers, the Application charged Washington with two counts: first, possession of a controlled dangerous substance, "to wit COCAINE," in violation of Art. 27, § 287; and second, possession of a controlled dangerous substance, "to wit: COCAINE," in a quantity sufficient to indicate an intent to distribute, in violation of Art. 27, § 286.

Washington's case was elevated to the Circuit Court of Baltimore City ("Circuit Court") by a criminal information. That Information repeated the Case and Tracking Numbers from the Application and included a new Circuit Court Crimi-

nal Information Number, but it also listed the date of offense as "16 April 1996," unlike the Application's reference to "04-16-99." The Information charged Washington in Count 1 with possessing a controlled dangerous substance, "to wit: *Cocaine*," "in sufficient quantity to reasonably indicate . . . an INTENT to MANUFACTURE and DISTRIBUTE" in violation of Art. 27, § 286, and in Count 2 with possessing a controlled dangerous substance, "to wit: *Cocaine*," in violation of Art. 27, § 287. The Information included no other statements describing Washington's crimes and did not expressly incorporate the Application's Statement of Charges.

The government also introduced evidence that Washington pled guilty to the Information's first count. It introduced a certified statement from the Circuit Court Clerk that provided the Circuit Court Criminal Information Number and described Washington's conviction as "cds, guilty." The government also introduced a certified "true copy" of the computer docket materials. That printout listed the same Circuit Court Criminal Information Number as found on the Clerk's statement and the Information, and it indicated that on November 23, 1999, Washington pled guilty (abbreviated "G") to Count 1, which it described as "CDS: POSS W/INT MANF/D." It listed Washington's sentence as three years. A handwritten docket sheet again repeated the Circuit Court Criminal Information Number, stated that Washington pled guilty to Count 1 on November 23, 1999, and mentioned his three-year sentence, but it described the charge as "PWID Heroin."

B.

In analyzing whether the government adequately proved that Washington's November 1999 conviction qualifies as an ACCA predicate, it is important to distinguish two issues: what records may the government use in determining Washington's offense of conviction, and what records may the government use in determining whether the nature of that

conviction qualifies it as an ACCA predicate. We address
each in turn.

*Shepard*'s strictures do not fully apply when determining
the bare offense to which Washington pled guilty. *Shepard*
itself described its holding as limiting the records courts may
use in "determining the *character* of" an ACCA-ambiguous
offense. *Shepard*, 544 U.S. at 16 (emphasis added). In *United
States v. Martinez-Melgar*, 591 F.3d 733, 739 (4th Cir. 2010),
we noted that *Shepard* "concerned whether the substantive
content of a prior conviction qualified the defendant for an
[ACCA enhancement,] not the conceptually distinct issue of
whether a conviction had occurred at all." *See also United
States v. Dean*, 604 F.3d 169, 175–76 (4th Cir. 2010) ("The
categorical approach is a way of classifying *the activity
involved in prior offenses*, not an across-the-board prohibition
on learning any detail in some way related to a prior convic-
tion." (emphasis added)).

Given *Shepard*'s twin rationales, this distinction makes
sense. Unlike facts about the nature of a prior conviction,
determining a conviction's name will not engender mini-trials
because the relevant information is contained in court records,
not trial transcripts and police reports. Nor is there a threat to
defendants' jury trial rights in such fact-finding. The fact at
issue relates to courts' decisions, not defendants' conduct, and
an offense's name is so close to its bare existence that it falls
comfortably within the most basic exception to ordinary jury
fact-finding, the sentencing judge's authority to find the fact
of a prior conviction. *See Almendarez-Torres v. United States*,
523 U.S. 224, 239-47 (1998). Indeed, determining the name
of the offense does not trigger an enhanced sentence; courts
must still use the categorical or modified categorical approach
to determine whether the particular conviction for that offense
is an ACCA predicate.

Other circuits have similarly held that *Shepard* primarily
applies to facts about the nature of an ambiguous offense,

rather than the fact of the offense's existence and statutory description. In *United States v. Beasley*, 442 F.3d 386, 392 (6th Cir. 2006), the court rejected a challenge to the district court's use of the indictment and the testimony of the Pre-Sentence Report's author to determine the meaning of the inscription "CA:M2" on the judgment of conviction; "*Taylor*'s [and *Shepard*'s] categorical approach would apply, if at all, only *after* the district court made this threshold identification of the offense of conviction." *See also United States v. Sanders*, 470 F.3d 616, 623 (6th Cir. 2006) (noting that "*Shepard* does not apply to the initial factual question of determining the particular offense of which a defendant was convicted."). Others have also described *Shepard* as applying to facts about the nature of a prior conviction rather than its existence. *See, e.g*, *United States v. Carter*, 591 F.3d 656, 661 (D.C. Cir. 2010) (noting that "*Shepard* concerns how a sentencing court determines the 'character' of an offense" and relying on materials such as certified computer printouts of docket materials to prove the fact of a prior conviction); *United States v. Neri-Hernandes*, 504 F.3d 587, 591 (5th Cir. 2007) (same); *United States v. Zuniga-Chavez*, 464 F.3d 1199, 1203–05 (10th Cir. 2006) (same).

Accordingly, the district court was entitled to consider what it did, including the printouts of docket materials, in determining merely the specific offense to which Washington pled guilty.[2] In keeping with this distinction, courts have routinely used such documents in determining the mere existence of a conviction. *See, e.g.*, *Martinez-Melgar*, 591 F.3d at 738, 739 ("sentencing courts routinely rely on similar printouts of computerized records" and may do so when determining whether an admission occurred rather than the "substantive content" of

---

[2]The Ninth Circuit has concluded that a Maryland docket sheet similar to those present here qualified under *Shepard*. *See United States v. Strickland*, 601 F.3d 963, 966–70 (9th Cir. 2010) (en banc). Like the panel in *Harcum* however, we need not decide this issue to resolve this case. *See Harcum*, 587 F.3d at 225 & n.8.

that admission); *Carter*, 591 F.3d at 659 (noting in a case involving Maryland records like those here that "[the defendant] cites to no case holding certified records from a state court's disposition database insufficient to support a finding of a prior conviction by a preponderance of the evidence, and we are unaware of any."); *Zuniga-Chavez*, 464 F.3d at 1204–05 (relying on certified docket sheets and case summaries to determine the existence of a conviction).

Our review discloses nothing that would cause us to overturn the district court's finding that Washington did in fact plead guilty to possession with intent to distribute a controlled substance. The sources here indicate that Washington pled guilty to possession with intent to distribute. The certified true copy of the computer docket materials indicates that Washington pled guilty to Count 1, described as "POSS W/INT TO MANF/D," and was sentenced to three years. The document contains the same Criminal Information Number as contained in the *Shepard*-qualified Information. And the *Shepard*-approved Information indicates in Count 1 that Washington was accused of possessing a narcotic in sufficient quantity as to demonstrate "INTENT to MANUFACTURE and DISTRIBUTE" in violation of Art. 27, § 286.

While Washington points out discrepancies, they do not upend the trial court's sound conclusion. The handwritten entries do suggest that Washington pled guilty to possession with intent to distribute heroin, but they nonetheless indicate his offense was possession with intent to distribute. The Information does provide a different date of offense than the District Court Application. But the use of identical Tracking and Case Numbers indicate the Information's erroneous date of offense is simply a scrivenor's error. Nor does it matter that the order of charges in the Circuit Court Information differed from that in the District Court Application; the Tracking and Case Numbers indicate the same offenses are at issue, and nothing hangs on the order in which charges are listed.

C.

Establishing the fact of a prior conviction that is ambiguous for ACCA purposes does not get the government home free. The fact of the conviction does not tell us whether or not it qualifies as an ACCA predicate. The government still must prove the *nature* of Washington's possession with intent to distribute conviction. To this demonstration *Shepard*'s restrictions fully apply, limiting the government and the sentencing court to "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms," *Johnson*, 130 S. Ct. at 1273, as well as any information explicitly incorporated into such records, *see Harcum*, 587 F.3d at 225.

In Washington's case, the Circuit Court Information qualifies as evidence of the nature of his conviction: informations are charging documents, thereby falling on *Shepard*'s list, and there is no indication that Washington pled guilty to charges other than those alleged against him. *See United States v. Day*, 465 F.3d 1262, 1266–67 (11th Cir. 2006) (disallowing reliance on an information where it charged an offense other than that to which the defendant ultimately pled guilty). Thus the Information — the only piece of evidence the district court relied on to determine the controlled substance at issue —is sufficient. It specifically states "to wit: *Cocaine*" in reciting Washington's possession with intent to manufacture and distribute charge, indicating that he faced a twenty-year maximum sentence that rendered his later plea an ACCA predicate rather than a non-qualifying five-year maximum sentence for some other controlled substance.

Washington points to nothing that would cause us to overturn the district court's findings here. The inconsistencies he notes do not undermine the obvious import of the *Shepard*-approved Information. The handwritten notes do refer to heroin, but as the district court noted, convictions for either substance — cocaine or heroin—would trigger the ACCA. The

discrepancies between the dates of offense and order of charges listed in the Information and Application are also inconsequential because each still charged Washington with possessing a qualifying narcotic with intent to distribute and because the Information's recitation of the Application's Case and Tracking Numbers defeats any suggestion that the Information relates to a different underlying crime.

Finally, Washington never introduced any evidence indicating that his November 1999 conviction involved anything other than an ACCA-qualifying narcotic, instead suggesting only that the government did not meet its burden. Under these circumstances, the Information suffices to demonstrate that Washington's conviction qualified under the ACCA. *See, e.g.*, *United States v. Simms*, 441 F.3d 313, 317 (4th Cir. 2006) (relying only on charging documents where they clearly "allege[ ] an [ACCA predicate] and the record provides no basis for a belief that the facts admitted by the defendant [by pleading guilty] might not have constituted such a crime"); *Dowd*, 451 F.3d at 1255 & n.12 (relying on an indictment alone to determine that a plea conviction for an ambiguous burglary offense qualified as an ACCA predicate).[3]

## IV.

Washington requests that we apply a heightened standard of proof to judicial fact-finding under the modified categorical approach. Honoring his request would require us to depart from our precedent, to confuse and complicate the fact-finding process in sentencing hearings, and to adopt an erroneous and untenable interpretation of *Shepard*. We decline to do so.

Washington also asks us to hold that small inconsistencies

---

[3]Because Washington's November 1999 conviction properly qualifies as his third ACCA predicate, we need not address whether his resisting arrest conviction could also count.

and clerical mistakes in state records prevent the government from meeting its burden under the preponderance standard. But multiple pieces of reliable evidence indicate the existence of his November 1999 possession with intent to distribute conviction, and the district court relied only on *Shepard*-approved documents in determining the ACCA-qualifying nature of that offense. What happened below was fact-finding in a routine and conscientious sense, and we decline to disturb it. Accordingly, the judgment is affirmed.

*AFFIRMED*