PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4159

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

SHERWIN ARCHIE,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Terrence W. Boyle, District Judge.  (7:12-cr-00017-BO-1)

Argued:  September 17, 2014          Decided:  November 17, 2014

Before GREGORY, AGEE, and KEENAN, Circuit Judges.

Affirmed by published opinion.  Judge Agee wrote the opinion, in which Judge Gregory and Judge Keenan joined.

**ARGUED:** Joshua Brian Howard, GAMMON, HOWARD, ZESZOTARSKI, PLLC, Raleigh, North Carolina, for Appellant.  Yvonne Victoria Watford-McKinney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

AGEE, Circuit Judge:

Pursuant to a written plea agreement, Sherwin Archie ("Archie") pled guilty to several charges stemming from an armed robbery in Wilmington, North Carolina. Archie does not challenge his conviction or guilty plea on appeal. Instead, he contends that the district court sentenced him in violation of the Sixth Amendment and relied upon insufficient evidence in enhancing his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). For the reasons that follow, we affirm the judgment of the district court.

I.

The facts underlying Archie's conviction are undisputed. On October 19, 2011, Archie entered a Family Dollar store with a firearm and demanded money from the cashier. He fled the scene with $187, but security cameras captured the robbery showing Archie. Several days later, police executed a search warrant on his home where the firearm used during the robbery was recovered. Archie later confessed to the Family Dollar robbery along with an unsolved bank robbery.

A federal grand jury indicted Archie for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Counts One and Four); Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count Two); using and carrying a

firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Counts Three and Six); and armed bank robbery in violation of 18 U.S.C. § 2113 (Count Five).

In a written plea agreement, Archie agreed to plead guilty to Counts One, Two, and Three of the indictment in exchange for dismissal of the remaining charges. Under the terms of the plea deal, Archie agreed

> [t]o waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post[-] conviction proceeding[.]

(J.A. 29.) The plea agreement advised Archie of the statutory sentencing range for each charge and noted that, based on his criminal history, he could face a sentencing enhancement under the ACCA. Pertinent to this appeal, Archie and the Government also acknowledged that the statutory minimum penalty for the firearm offense in Count Three would be "7 years." (J.A. 34.)

At the ensuing plea hearing, Archie affirmed that he had discussed the case with his attorney and was "satisfied with [his] law work." (J.A. 20.) After finding Archie competent to proceed, the district court explained the appeal waiver and the rights forfeited by pleading guilty. Archie acknowledged that he understood. Continuing its reference to the terms of the

3

plea agreement, the district court described the charges and the potential penalties for each offense. With regard to Count Three, the court noted that Archie could face a penalty of "seven years to life." (J.A. 21-22.) But the court also recognized that the seven-year minimum sentence applied only when the firearm was "brandished" during the crime, see 18 U.S.C. § 924(c)(1)(A), and the indictment did not assert brandishing as a separate element. Accordingly, the district court asked the Government whether it needed "to allege in the indictment that [the gun] was brandished in order for [the minimum] to be seven years[.]" (J.A. 23.) Citing the appropriate applicable law at the time, Government counsel responded that brandishing was a "sentencing factor that [did] not have to be specifically alleged [in the indictment.]" (Id.) Defense counsel did not object. The district court then accepted Archie's guilty plea, finding it freely and voluntarily entered.

In preparation for sentencing, the United States Probation Office prepared a presentence investigation report ("PSR"). The PSR designated Archie an armed career criminal under the ACCA based on three prior felony convictions: a 1977 third-degree robbery conviction from New York; a 1983 attempted burglary conviction from New York; and a 1994 assault conviction from North Carolina. The ACCA designation caused the statutory

4

minimum sentence for Counts One and Two to increase to 180 months. As the parties contemplated at the time of the plea, the PSR also included an 84-month minimum sentence for Count Three because the investigatory evidence established that Archie had indeed brandished the firearm during the Family Dollar robbery. After several other adjustments not relevant here, the PSR calculated Archie's total offense level at 30 and his criminal history category at IV. That resulted in a guidelines sentencing range of 135 to 168 months, falling below the statutory minimums noted above.

Before sentencing, Archie objected to his career offender designation under the ACCA, arguing that the Government lacked adequate factual support for the New York third-degree robbery conviction. Archie contended that several of the computerized records relied upon to establish this conviction contained inconsistent dates, and one document included a criminal indictment number tied to another defendant. According to Archie, these inconsistencies, when coupled with the age of the conviction, "insert[ed] the possibility [of] more than just scrivener's error but, indeed, wholesale mistake." (J.A. 41.)[1]

---

[1] Archie also contested the 1983 conviction on similar grounds, but withdrew that objection before the sentencing hearing. Archie makes no argument as to the 1983 conviction on appeal.

The district court overruled Archie's objection, concluding the Government's records were sufficient to establish the New York conviction by a preponderance of the evidence. Adopting the PSR, the district court sentenced Archie to the mandatory minimum - 180 months' incarceration for Counts One and Two and a consecutive 84 months' incarceration for Count Three.

Four months after Archie's sentencing, the Supreme Court decided Alleyne v. United States, 133 S. Ct. 2151 (2013). In Alleyne, the Court overruled existing precedent and held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" and found beyond a reasonable doubt. 133 S. Ct. at 2155. In Alleyne, as here, the defendant was convicted of using a firearm during and in relation to a crime of violence under 18 U.S.C. § 924. Id. The district court in that case concluded the mandatory minimum for the charge was 84 months based on its finding by a preponderance of the evidence at sentencing that a firearm was "brandished." Id. at 2156. The Supreme Court reversed and vacated the defendant's sentence because the "[j]udge rather than the jury, found brandishing, thus violating [his] Sixth Amendment rights." Id. at 2163-64.

Archie timely appealed, and this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

6

II.

Archie raises two issues on appeal. First, he argues the district court violated his Sixth Amendment rights as set forth in Alleyne when it raised the statutory minimum sentence for his firearm conviction based on a judicial finding of brandishing. Second, Archie contends the Government presented insufficient evidence to sustain his career offender designation under the ACCA.

A.

We first consider whether Archie waived the right to argue on appeal that the district court improperly enhanced his sentence based on judicially determined facts in violation of Alleyne.

It is well settled that a criminal defendant may waive the statutory right to appeal his sentence. See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); United States v. Wiggins, 905 F.2d 51, 53 (4th Cir. 1990). Where, as here, the Government seeks enforcement of an appeal waiver and there is no claim that the Government breached its obligations under the plea agreement, the waiver will be enforced to preclude a defendant from appealing a specific issue if the record establishes that the waiver is valid and the issue being appealed is within the scope of the waiver. United States v.

7

Attar, 38 F.3d 727, 731–33 (4th Cir. 1994); see also United States v. Thornsbury, 670 F.3d 532, 537 (4th Cir. 2012) ("An appellate waiver is valid if the defendant's agreement to the waiver was knowing and intelligent.").

Archie does not contest the validity of his appeal waiver, and the record confirms that it was knowing and voluntary. See United States v. Copeland, 707 F.3d 522, 528 (4th Cir. 2013) (concluding defendant knowingly and intelligently waived his right to appeal where, during the plea colloquy, he affirmed "that he had 'read and discuss[ed] [the] entire plea agreement with [his] lawyer' before signing it, and that he 'underst[ood] each term' in it." (alteration in original)). Archie's sole challenge is that his Alleyne claim falls outside the scope of the appeal waiver. It does not.

At the time of Archie's sentencing, Supreme Court precedent dictated that factors triggering mandatory minimum sentences "need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt." Harris v. United States, 536 U.S. 545, 568 (2002); see Alleyne, 133 S. Ct. at 2155 ("In Harris . . . this Court held that judicial factfinding that increases the mandatory minimum sentence for a crime is permissible under the Sixth Amendment."). Accordingly, the district court correctly applied the law under Harris by enhancing Archie's minimum sentence based on its finding that

8

Archie had brandished a firearm. Although Alleyne later overruled Harris after Archie's sentencing hearing, that post-sentencing change in the law does not void Archie's appeal waiver.

We addressed the proper scope of an appeal waiver in light of a subsequent change in the law in United States v. Blick, 408 F.3d 162 (4th Cir. 2005). There, the defendant entered into a plea agreement and was sentenced before the Supreme Court decided United States v. Booker, 543 U.S. 220 (2005). Despite an appeal waiver provision barring him from appealing "any sentence within the maximum provided in the statute of conviction," Blick argued on appeal that he should be resentenced in light of the change in the law that Booker effected. Blick, 408 F.3d at 169. We concluded Blick's claim was within the scope of his valid appeal waiver because, "[a]lthough the law changed after Blick pled guilty, his expectations (as reflected in the plea agreement) did not." Id. at 173. Indeed, "Blick was sentenced precisely in the manner that he anticipated." Id. We emphasized that "[p]lea bargains rest on contractual principles, and each party should receive the benefit of its bargain." Id. Consequently, a party "'cannot . . . ask to re-bargain the waiver of his right to appeal because of changes in the law.'" Id. at 170 (quoting United States v. Lockett, 406 F.3d 207, 214 (3d Cir. 2005)).

"A plea agreement, like any contract, allocates risk." United States v. Johnson, 410 F.3d 137, 153 (4th Cir. 2005). "And the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompan[ies] a guilty plea." United States v. Sahlin, 399 F.3d 27, 31 (1st Cir. 2005). Archie assumed this risk in exchange for the Government's concessions, and he was sentenced in exactly the manner agreed upon. If we declined to enforce Archie's appeal waiver because of a subsequent change in the law, we would deprive the Government of the benefit of its bargain and frustrate the purpose underlying such contracts.

Archie's assertion that he is entitled to the benefit of Alleyne on appeal is indistinguishable from the appellant's argument in Blick. Archie expressly waived his right "to appeal whatever sentence . . . imposed," along with "all rights to contest the conviction or sentence in any post conviction proceeding[.]" (J.A. 29-30.) Like the appellant in Blick, Archie received a sentence that fully complied with the law applicable at the time, "precisely in the manner he anticipated." 408 F.3d at 173. Consequently, Archie cannot invalidate his appeal waiver to claim the benefit of subsequently issued case law even if it suggests his sentence now would be different.

Notwithstanding the foregoing, Archie contends that his Alleyne claim falls "within the narrow class of [errors] that we have allowed a defendant to raise on direct appeal despite a general waiver of appellate rights." United States v. Lemaster, 403 F.3d 216, 220 n.2 (4th Cir. 2005). According to Archie, "proceedings which affect Constitutional rights and fundamental fairness," such as the instant claim, "fall outside the scope of such waivers." (Reply Br. 2.)

To be sure, in limited circumstances, "a knowing and voluntary waiver of the right to appeal cannot prohibit [a] defendant from challenging a few narrowly-construed errors." Johnson, 410 F.3d at 151. However, we have reached this result and declined to enforce a valid appeal waiver only where the sentencing court violated a fundamental constitutional or statutory right that was firmly established at the time of sentencing. Such is not the case here. See Attar, 38 F.3d at 732–33 (holding that a valid appeal waiver does not bar review of a post-plea violation of the right to counsel); United States v. Broughton–Jones, 71 F.3d 1143, 1146-47 (4th Cir. 1995) (finding defendant's claim that the district court's restitution order was statutorily barred fell outside appeal waiver). These limited exceptions were permitted on the narrow grounds that "a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings

11

following entry of the plea will be conducted in accordance with constitutional limitations." Attar, 38 F.3d at 732. Clearly, the rationale underlying these cases is absent when the alleged error stems from a subsequent change in the law and not a failure by the court to apply the established law at the time of sentencing. Accordingly, we have never permitted a criminal defendant to avoid a valid and applicable appeal waiver by claiming error based on a subsequent change in the law.

In short, defendants cannot knowingly and voluntarily enter an appeal waiver, receive a sentence that fully complies with the law applicable at the time of sentencing, and then, when that law later changes, argue that the issue falls outside the binding scope of the waiver. Notwithstanding the Government's concession during oral argument that Archie's sentence would now be different under Alleyne, we deny his claim because it falls within the scope of the valid appeal waiver.

B.

The ACCA mandates a minimum fifteen-year prison sentence for a person convicted of unlawful possession of a firearm who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another[.]" 18 U.S.C. § 924(e)(1). Thus, to apply the ACCA enhancement, the court must find: (1) that at least three

prior convictions exist, (2) that those convictions were for either a violent felony or a serious drug offense, and (3) that the prior offenses were committed on different occasions from one another. Id. The prosecution bears the burden of establishing these elements by a preponderance of the evidence. See United States v. Harcum, 587 F.3d 219, 222 (4th Cir. 2009), abrogated on other grounds as stated in, United States v. Aparicio-Soria, 740 F.3d 152, 155-56 (4th Cir. 2014); see also United States v. Thompson, 421 F.3d 278, 283-85 (4th Cir. 2005).[2]

The PSR filed in the district court identified three ACCA qualifying convictions: a 1977 third-degree robbery conviction from New York, a 1983 attempted burglary conviction from New York, and a 1994 assault conviction from North Carolina. Archie does not dispute that these offenses constitute violent felonies within the meaning of the ACCA for a defendant convicted of such crimes or that the offenses listed were committed on different occasions. He only challenges whether the Government presented sufficient evidence for the district court to find that the third-degree robbery conviction in fact exists. Pointing to

---

[2] The Government declined to rely on the appeal waiver with respect to Archie's second claim - that the district court erred in sentencing him as an armed career criminal under the ACCA. Accordingly, we review this claim of error on its merits. See United States v. Poindexter, 492 F.3d 263, 271 (4th Cir. 2007) (noting the government can elect not to enforce an appeal waiver and instead contest the merits of a defendant's argument).

discrepancies in the documents underlying the PSR, Archie argues that the Government's evidence is insufficient to prove the fact of conviction as to him. Since this is a purely factual dispute, we review the district court's judgment for clear error. See United States v. Wardrick, 350 F.3d 446, 451 (4th Cir. 2003).

In siding with the Government and finding that Archie was convicted of the New York third-degree robbery, the district court relied on four documents: a computerized printout from the New York Department of Corrections ("Appendix A"); a Certificate of Disposition from the clerk of the Supreme Court of the State of New York, Kings County ("Appendix B"); a Report of Investigation from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("Appendix C"); and a computerized form from the New York Supreme Court Criminal Term Correspondence Unit ("Appendix D"). (J.A. 44-51.)

Appendices A, B, and C each provide that Archie was convicted of third-degree robbery in 1977 in Kings County, New York. Appendix A states that Archie entered the New York penal system for this charge on July 11, 1977, but does not show the date of conviction or docket number. Appendix B lists a conviction date of June 9, 1977 and sentencing on the same date. Appendix C, on the other hand, provides a conviction date of June 13, 1978. Appendices B, C, and D each identify the same

14

docket number, "3611-76," and list Archie as the offender. (J.A. 47-51.) Appendix D also recognizes an inaccuracy in Appendix C, stating that one of the other docket numbers linked to Archie in Appendix C "was not the same defendant." (J.A. 51.) In sum, Appendices A, B, and D each provide consistent accounts of Archie's conviction for third-degree robbery, whereas Appendix C provides a conflicting conviction date.

Archie points to our decision in United States v. Martinez-Melgar, 591 F.3d 733 (4th Cir. 2010), for the proposition that reference to secondary records, such as those described above, to determine the existence of a prior conviction is only allowed when "'there is no indication whatever that the state records are inaccurate.'" (Opening Br. at 14 (quoting Martinez-Melgar, 591 F.3d at 739).) But, as we have since indicated, this language from Martinez-Melgar must be considered in context and does not sweep so broadly. See United States v. Washington, 629 F.3d 403, 412-13 (4th Cir. 2011).

In Washington, this court examined the very question at issue here – what records may the district court consider in determining the fact of a defendant's prior conviction. Id. Washington held that a sentencing court can rely on materials such as certified computer printouts to prove the fact of a prior conviction. Id. at 413 ("[T]he district court was entitled to consider what it did, including the printouts of

15

docket materials, in determining merely the specific offense to which [the defendant] pled guilty. In keeping with this distinction, courts have routinely used such documents in determining the mere existence of a conviction." (footnote omitted)). The court further affirmed the district court's reliance on such materials notwithstanding several inconsistencies in the documents. Id. Accordingly, despite Archie's contention otherwise, there is no prohibition on secondary records simply because they may contain discrepancies regarding a prior conviction.

Archie nevertheless argues that the Government "failed its burden because the conviction they projected upon [him] was indeterminately dated, premised upon secondary records, and even those records were contradictory and unreliable." (Opening Br. 15.) We are unpersuaded.

When called upon to determine the existence of a prior conviction for sentencing purposes, a district court can engage in permitted "fact-finding in a routine and conscientious sense" even if "inconsistencies and clerical mistakes [exist] in state records[.]" Washington, 629 F.3d at 414-15. That is precisely what occurred here. The district court weighed the evidence and reasonably found that the same named defendant, Archie, was convicted of third-degree robbery in 1977 in Kings County, New York based upon the information in all the underlying documents,

16

the conviction date listed in Appendix B, the consistent incarceration date in Appendix A, and the uniform docket numbers. (See J.A. 67 ("[I]f you follow the records that the Government has submitted, it looks like all the crimes charged were charged in '76. It appears to me that he had a plea in '77 and then a sentence in '78. At least that's the way it looks to me.").) We see no clear error in this conclusion. See United States v. Wooden, 693 F.3d 440, 451 (4th Cir. 2012) ("A court reviewing for clear error may not 'reverse . . . [unless], on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed.'" (citation omitted)).

When faced with records that contain inconsistencies, this court has concluded that certain discrepancies, such as different dates of the same offense, "do not upend the trial court's sound conclusion" when there is additional evidence to "indicate the . . . erroneous date . . . is [likely] a scrivener's error." Washington, 629 F.3d at 413. We therefore decline to disturb the district court's finding.


III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

17