**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 14-6969**

───────────

CHRISTOPHER REGINALD HINES,

　　　　　Petitioner - Appellant,

　　v.

WARDEN DREW,

　　　　　Respondent - Appellee.

───────────

Appeal from the United States District Court for the District of South Carolina, at Charleston. Mary G. Lewis, District Judge. (2:12-cv-01890-MGL)

───────────

Argued: September 15, 2015　　　　Decided: November 25, 2015

───────────

Before NIEMEYER, GREGORY, and THACKER, Circuit Judges.

───────────

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Niemeyer and Judge Thacker joined.

───────────

**ARGUED**: Joel Morris Bondurant, Jr., BONDURANT LAW FIRM, Atlanta, Georgia, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF**: Jill Westmoreland Rose, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Christopher Reginald Hines pleaded guilty to two offenses stemming from an extensive mortgage fraud conspiracy. On appeal, Hines argues that his money laundering conspiracy conviction must be reversed under United States v. Santos, 553 U.S. 507 (2008), and thus, that the district court erred in denying his petition for a writ of habeas corpus under 28 U.S.C. § 2241. We disagree. Because we find no merger problem under Santos, we affirm the district court's denial of Hines's § 2241 petition.

I.

A.

A grand jury in the Western District of North Carolina returned a second superseding indictment that charged Hines with eleven counts related to his investment scheme. Count one charged Hines with conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371, including making a false statement in connection with a loan, 18 U.S.C. § 1014; mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; and bank fraud, 18 U.S.C. § 1344. Counts two through five charged Hines with substantive mail fraud offenses occurring on four specific dates in 2001. Counts six through eight charged Hines with substantive bank fraud offenses occurring on three specific

2

dates in 2000 and 2001. Counts nine and ten charged Hines with wire fraud offenses occurring on two specific dates in 2000. Count eleven charged Hines with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

Following his indictment, Hines pleaded guilty to one count of conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371 (Count One) and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Eleven). The government dismissed all other counts. The convictions stemmed from Hines's leadership of a mortgage fraud scheme from March 2000 until September 2001. The scheme involved multiple coconspirators, at least two of whom pleaded guilty to various offenses.

In his plea agreement, Hines admitted that he and his coconspirators created several entities, referred to as "Mega Group" entities, to facilitate the conspiracy. Through those entities, Hines recruited buyers with good credit to purchase various properties. He offered the buyers to become real estate investors with no money down, earning cash on each home that they purchased. To lull the buyers, Hines offered to make ownership of the properties easy: buyers were told that they would not be responsible for any mortgage payments, that Mega Group entities would place renters in the properties, and that the Mega Group entities would be responsible for the renters and

3

any payments they failed to make.  Hines claimed that the Mega Group entities would eventually sell the properties, splitting the profit with the buyers.

Unbeknownst to the buyers, the Mega Group entities bought the properties shortly before the buyers, and then "flipped" the property to the buyer, making money off each transaction.  Hines and his coconspirators arranged for the buyers to purchase multiple properties within a short time frame, to prevent the earlier sales from appearing on their credit reports.  After a short period of time during which mortgage payments were made by the Mega Group entities to induce the buyers to purchase more than one "investment property," the Mega Group entities stopped making mortgage payments, eventually causing the mortgage loans to become delinquent.  Ultimately, many of the investment properties went into foreclosure.

To perpetrate the scheme, Hines falsified the loan applications.  Although the buyers supplied accurate information to the Mega Group entities, Hines and his coconspirators misrepresented the buyers' income, falsely indicated that the buyers were purchasing the property as a residence, and made it appear as though the buyers had sufficient funds to cover the down payment.

In total, Hines and his coconspirators defrauded at least 100 individual buyers in North Carolina, along with numerous

4

mortgage lenders throughout the United States. The mortgage loans that they fraudulently obtained exceeded $23 million.

## B.

Hines stipulated to the factual basis for his guilty plea. The "Stipulation to Factual Basis" states, "With respect to Count One," Hines "was aware that false information regarding the source of down payments was contained in HUD-I Settlement Statements in which Mega Group and its related companies were sellers, and that this information was being sent to potential lender financial institutions." J.A. 84. The stipulation further states that, "With respect to Count Eleven," Hines "was aware [that] at least a portion of the proceeds from loans involved in Count One were used to facilitate other financial transactions to further or promote the conspiracy charged in Count One." Id.

At his Rule 11 hearing, Hines affirmed to the magistrate judge that "[w]ith respect to Count [Eleven], [he] was aware that at least a portion of the proceeds from loans involved in Count One were used to facilitate other transactions to further or promote the conspiracy charged in Count One." J.A. 94. During the plea colloquy, the magistrate judge specifically asked Hines, "[I]s this a true statement and do you affirm this statement at this time?" Id. Hines stated, "Yes." Id. Further, at the plea proceeding, the government proffered that,

5

with respect to Count One, Hines and his coconspirators used the Mega Group entities to purchase real estate and inflate its value before selling it to the buyers. Hines then took the difference between the purchase and the sale price "as a profit." J.A. 92. With respect to Count Eleven, the government proffered that "some of the proceeds . . . that were received in the profits" from the transactions "were then used to make the mortgage payments on behalf of the buyers and also used to make . . . down payments on behalf of the buyers." J.A. 70. After the government's factual proffer, the magistrate judge asked Hines, "[D]o you understand both what I said and [the government] said to expand upon it are the charges to which you're pleading guilty . . . ?" Id. Hines stated, "Yes." Id.

The district court sentenced Hines to a term of imprisonment of 188 months, which included a term of 60 months on Count One and a term of 188 months on Count Eleven, to be served concurrently.

C.

After unsuccessful appeals, Hines filed a habeas petition in which he argued that the savings clause of 28 U.S.C. § 2255 applied and that his money laundering conspiracy conviction should be invalidated in light of Santos on the ground that the government failed to show that the transactions underlying the money laundering conspiracy conviction involved the profits of

6

unlawful activity. Hines claimed that the transactions supporting his money laundering conspiracy conviction were the same transactions listed in the indictment as overt acts in furtherance of the mortgage fraud conspiracy, leading to a "merger problem." The district court found that Santos, as interpreted by United States v. Halstead, 634 F.3d 270 (4th Cir. 2011), and United States v. Cloud, 680 F.3d 396 (4th Cir. 2012), was inapplicable because it did not apply to conspiracy offenses. Hines then filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), which the district court denied. Hines timely appealed.

## II.

We review de novo a district court's grant or denial of a writ of habeas corpus on questions of law. United States v. Brown, 155 F.3d 431, 434 (4th Cir. 1998). We have jurisdiction over this appeal under 28 U.S.C. § 1291. Id. at 433.

## III.

Applying Santos, Hines contends that the money laundering conspiracy merges into the mortgage fraud conspiracy, as the same transactions support convictions for both crimes. He thus claims that Santos requires that the money laundering conspiracy statute be construed narrowly so as to apply only to the "net

7

profits" of the mortgage fraud conspiracy. Hines asserts that because the government did not prosecute the money laundering conspiracy statute in his case narrowly, as required by Santos, his money laundering conspiracy crime merged with the mortgage fraud conspiracy, requiring that the money laundering conspiracy conviction be vacated. As he argues, "[my] conviction under Count [Eleven] of the indictment simply cannot stand. The financial transactions charged therein are entirely duplicative of the financial transactions that form the basis for the Count [One] conviction. . . . In light of the plain and undeniable overlap in the underlying financial transactions charged in both counts, the two conspiracy charges . . . 'obviously merged.'" Appellant's Br. at 29-30 (quoting United States v. Crosgrove, 637 F.3d 646, 655 (6th Cir. 2011)).

Setting aside the issues of appellate waiver, see United States v. Archie, 771 F.3d 217, 223 (4th Cir. 2014), and actual innocence of the dismissed charges, see Bousley v. United States, 523 U.S. 614, 623-24 (1998), we find no merger problem.

A.

To assess Hines's claim on appeal, it is first necessary to put his argument in context by briefly discussing the Supreme Court's Santos decision and our application of that case in Halstead and Cloud. Hines was convicted of money laundering conspiracy under 18 U.S.C. § 1956(h). To prove money laundering

8

conspiracy, the government was required to show (1) the existence of an agreement between two or more persons to commit one or more of the substantive money laundering offenses proscribed under 18 U.S.C. § 1956(a) or § 1957; (2) that the defendant knew that the money laundering proceeds had been derived from an illegal activity; and (3) that the defendant knowingly and voluntarily became part of the conspiracy. United States v. Singh, 518 F.3d 236, 248 (4th Cir. 2008) (citing United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005)). At the time of the transactions at issue here, the statute provided no definition of "proceeds."[1]

In Santos, a divided Supreme Court grappled with alternate definitions of "proceeds" as either "receipts" or "profits" of a crime. 553 U.S. 507. Citing the rule of lenity, a plurality of the Court adopted the "profits" definition. Id. at 514 (plurality opinion). The plurality further noted that the "receipts" interpretation would create a "merger problem" for statutes such as the illegal gambling statute, 18 U.S.C. § 1955,

---

[1] Congress amended the money laundering statute in May 2009; that amendment effectively overruled Santos, defining proceeds to include "gross receipts." Fraud Enforcement and Recovery Act of 2009, Pub.L. No. 111-21, § 2(f)(1), 123 Stat. 1617, 1618 (2009) (codified at 18 U.S.C. § 1956(c)(9)). Nevertheless, because the amendment was not enacted at the time of the conduct giving rise to Hines's convictions, this expanded definition of "proceeds" does not apply in this case.

9

at issue in Santos itself:  "If 'proceeds' meant 'receipts,' nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery." Id. at 515 (plurality opinion).

Justice Stevens, concurring, disagreed with the plurality's broad application of the rule of lenity and focused instead on the merger issue.  With respect to the illegal gambling statute, Justice Stevens stated that "[t]he revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute," because "[a]llowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy."  Id. at 527-28 (Stevens, J., concurring).  Justice Stevens suggested, however, that the Court "need not pick a single definition of 'proceeds' applicable to every unlawful activity," thereby implying that the "profits" definition is only warranted in the context of crimes creating such merger problems.  Id. at 525 (Stevens, J., concurring).

In United States v. Halstead, we considered the reach of Santos in the context of a defendant convicted of healthcare

10

fraud and money laundering. 634 F.3d 270. Halstead's fraud convictions arose from his scheme to capitalize on his patients' healthcare benefits by making phony medical diagnoses. Id. at 272-73. His money laundering conviction, by contrast, arose from his transfer of the illicit gains into his personal bank account. Id. at 280-81. He claimed that Santos prohibited his money laundering conviction because transferring his ill-gotten gains into his own bank accounts constituted an essential expense of operating his healthcare fraud. Id.

To resolve Halstead's argument we first examined what, exactly, Santos held. Relying on Marks v. United States, 430 U.S. 188 (1977), we interpreted Santos narrowly to bind lower courts only in cases where illegal gambling constituted the predicate for the defendant's money laundering conviction. Halstead, 634 F.3d at 278-79. But, because the merger problem provided the "driving force" behind both the plurality's and Justice Stevens's opinions, we recognized that Santos compelled us to construe the money laundering statute so as to avoid punishing a defendant twice for the same offense. Id. We concluded that a defendant cannot be convicted of money laundering merely "for paying the 'essential expenses of operating' the underlying crime." Id. at 279 (citing Santos, 553 U.S. at 528 (Stevens, J., concurring). But if "the financial transactions of the predicate offense are different

11

from the transactions prosecuted as money laundering" no merger problem arises.  Id. at 279–80.

Applying this rule to Halstead, we held that no merger problem tainted his money laundering conviction.  His healthcare fraud was "complete" as soon as he received the ill-gotten healthcare reimbursements.  Id. at 280.  Transferring these reimbursements into his own account thereafter constituted an altogether "separate" offense that the government properly prosecuted as money laundering.  Id.

We again had occasion to apply Santos in United States v. Cloud, a case involving strikingly similar facts as these.  680 F.3d 396.  Cloud's scheme, at its essence, involved convincing people to invest in real estate properties that, unbeknownst to the buyers, Cloud had recently purchased for a lesser amount. Id. at 399–400.  The scheme also involved falsification of loan applications and the payment of "thousands of dollars in kickbacks to buyers, at least one mortgage broker, and the recruiters responsible for finding the buyers."  Id. at 400. Cloud was convicted of several crimes, including, as is relevant here, one count of conspiracy to commit money laundering, one count of mortgage fraud conspiracy, and six counts of money laundering.  Id. at 399.  The substantive counts all concerned various payments Cloud made "to recruiters, buyers, and other coconspirators for the role each person played in the mortgage

12

fraud scheme." Id. at 406. On appeal, we reversed those convictions, finding that they suffered from the merger problem identified in Santos. Id. at 408. We concluded that, unlike the payments in Halstead, the charged transactions were payment of "the 'essential expenses' of the underlying fraud" because it was only through the promise of these payments that Cloud was able to persuade his coconspirators to do business with him. Id. at 406–08. That the payments were made after the services were performed did nothing to change that. Id. at 408. In order to correct the merger problem, we defined "proceeds" as "profits," as the Santos Court had done, and reversed the money laundering convictions on that basis. Id. at 409.

On the other hand, we found no merger problem with Cloud's conviction for conspiracy to commit money laundering because "[u]nlike Cloud's substantive money laundering charges, the conspiracy charge was not tied to any specific payment to a recruiter, buyer, or coconspirator" and "there was evidence that Cloud used the profits from his previous [illegal deals] to finance additional purchases." Id. at 408. Thus, we affirmed the conspiracy conviction. Id.

B.

Because Hines was not convicted of operating an illegal gambling business, we must determine whether a merger problem arises on the facts of this case. See Halstead, 634 F.3d at 279

13

(noting that "Justice Stevens's opinion . . . would require addressing that situation on a case-by-case approach" and "leav[ing] further development of a solution to a future case that presents the problem").

We have repeatedly held that if "'the financial transactions of the predicate offense are different from the transaction prosecuted as money laundering' no merger problem arises." United States v. Simmons, 737 F.3d 319, 324 (4th Cir. 2013) (quoting Halstead, 634 F.3d at 279-80). Hines stipulated to a factual basis supporting his guilty plea to Counts One and Eleven in the second superseding indictment. That stipulation states, with respect to the money laundering conspiracy count, that Hines "was aware th[at] at least a portion of the proceeds from loans involved in Count One were used to facilitate other financial transactions to further or promote the conspiracy charged in Count One." J.A. 84 (emphasis added). Further, Hines admitted, at his plea hearing, that the transactions underlying his money laundering conspiracy conviction are different from those underlying the mortgage fraud conspiracy conviction.

In addition, Hines agreed with the government's proffer that during the conspiracy period, he used the "profits" from his previous flips to make down payments on future properties. In utilizing monies from previous properties to finance future

14

purchases, Hines was not paying the "essential expenses" of the underlying crime.  See Cloud, 680 F.3d at 408.

Hines's admissions, therefore, are fatal to his Santos claim.  See id. ("In utilizing monies from previous properties to finance future purchases, Cloud was not paying the 'essential expenses' of the underlying crime.  Thus, [the conspiracy to commit money laundering count] does not present a merger problem."); Halstead, 634 F.3d at 279-80 ("But when the financial transactions of the predicate offense are different from the transactions prosecuted as money laundering, the merger problem recognized in Santos does not even arise.").  Thus, the merger problem never arises in the circumstances of this case, and Santos provides Hines no relief.[2]

---

[2] Hines's reliance on United States v. Crosgrove, 637 F.3d 646 (6th Cir. 2011), is misplaced.  Crosgrove was hired as a claims adjuster and attorney in a fraudulent insurance scheme. Id. at 655.  Crosgrove was indicted for conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Id. at 650-51.  Crosgrove stood trial on both counts and was convicted.  Id. at 652.  On appeal, the government conceded that the "only transactions on which the conviction" for conspiracy to launder money "could be upheld were Crosgrove's deposits of checks" that amounted to "salary payments" to him.  Id. at 654-55.   The Sixth Circuit held that the "crimes as charged obviously merge" because "the payments Crosgrove received for his services as an attorney and claims adjuster, which the Government states are the only basis for upholding Crosgrove's conviction for conspiracy to commit money laundering, are also listed in the indictment as overt acts in furtherance of the mail/wire fraud conspiracy."  Id. at 655.  Crosgrove, however, (Continued)

15

IV.

For the reasons stated, the district court's denial of Hines's § 2241 petition is

AFFIRMED.

---

is easily distinguishable from the case at issue, because here, Hines explicitly agreed that the transactions supporting his money laundering conspiracy conviction were different from those underlying his conviction under 18 U.S.C. § 371.