PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ANTONIO ALFREDO MARTINEZ-
MELGAR, a/k/a Alfredo Antonio
Martinez-Melgar,

*Defendant-Appellant.*

No. 08-4569

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Frank D. Whitney, District Judge.
(3:06-cr-00449-FDW-1)

Argued: December 4, 2009

Decided: January 20, 2010

Before SHEDD and DUNCAN, Circuit Judges,
and T. S. ELLIS, III, Senior United States District Judge
for the Eastern District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Senior Judge
Ellis wrote the opinion, in which Judge Shedd and Judge
Duncan joined.

## COUNSEL

**ARGUED**: Ann Loraine Hester, FEDERAL DEFENDERS
OF WESTERN NORTH CAROLINA, INC., Charlotte, North

Carolina, for Appellant. Mark Andrew Jones, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, Cecilia Oseguera, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

---

## OPINION

ELLIS, Senior District Judge:

Appellant, convicted on charges of drug trafficking and possession of a firearm during and in relation to the drug trafficking conviction, challenges his sentence as procedurally infirm. He claims the district court erroneously counted disposition by a state drug court supervision program as a "prior sentence" within the meaning of U.S.S.G. §§ 4A1.1 and 4A1.2. We agree, and therefore vacate the sentence and remand for resentencing.

I.

On May 11, 2007, Martinez-Melgar pled guilty without a plea agreement to (i) one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a), and (ii) one count of possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). The offense conduct charged in the indictment, and admitted to by Martinez-Melgar, occurred on February 2, 2006. J.A. 9, 46. A probation officer subsequently prepared a presentence report outlining (i) the offenses, (ii) Martinez-Melgar's criminal history, (iii) his personal characteristics, and (iv) available sentencing options. With respect to Martinez-Melgar's criminal history, the report states that in connection with a 2003 cocaine possession charge in North Carolina state court,

Martinez-Melgar on January 13, 2004 "was ordered to partici-pate in and successfully complete the District Court Step Drug Program as outlined in the Deferred Prosecution Agree-ment." J.A. 5–6. According to the presentence report, Martinez-Melgar was thereafter "[t]ransferred to unsupervised probation" on November 23, 2004, and the charge was ulti-mately dismissed on May 9, 2006. J.A. 5. Accordingly, the probation officer applied a one-point "prior sentence" enhancement to Martinez-Melgar's offense level for his par-ticipation in the program because "an admission of guilt in a judicial proceeding is required for acceptance into this pro-gram in Mecklenburg County, North Carolina." J.A. 6. More-over, the probation officer assessed two additional criminal history points because "[a]t the time the instant offense was committed, the defendant was a participant in the District Court Step Drug Program" and was therefore on probation as that term is used in the Sentencing Guidelines. J.A. 6. Martinez-Melgar, through counsel, objected to the probation officer's assessment of these three criminal history points. Specifically, Martinez-Melgar objected to the findings (i) that he made an admission of guilt in connection with his partici-pation in "STEP," the Mecklenburg County, North Carolina drug court supervision program, and (ii) that he was on proba-tion at the time of the offense of conviction.

Martinez-Melgar raised these objections during the course of a sentencing hearing held on April 14, 2008. His counsel represented that she was unable to locate any records relating to the charge in North Carolina state court, or to his alleged participation in the STEP program. In response, the probation officer indicated that computerized printouts obtained from a state agency demonstrated that Martinez-Melgar had, in fact, entered and successfully completed the STEP program. To support her statement that participation in the STEP program required an admission of guilt, the probation officer also described her experience working in the state's "general deferred prosecution program." J.A. 59. In that program, the officer explained, "the defendant was required to sign a state-

ment admitting their [sic] guilt to the offense." J.A. 58. She further noted that in the state's general deferred prosecution program at the time she was a state probation officer, the statement of responsibility would be "handed to the judge, along with the Deferred Prosecution Agreement, for review," and that the judge would sign the contract and the statement of responsibility would be retained in the defendant's probation file. J.A. 58. While acknowledging that the STEP program was "slightly different," the probation officer stated that she had spoken with a Mecklenburg County assistant district attorney named Steve Ward, who

> assured me that at the time the program was initiated and presently, a statement of guilt—an admission of guilt was necessary for acceptance into the program, and he has no reason to believe that at any time in between the beginning of the program and now that that policy would have changed.

J.A. 59.

Nonetheless, the probation officer indicated that she had been unable to acquire the statement of responsibility or deferred prosecution agreement because the state's probation office could not locate Martinez-Melgar's probation file and because the public defender's office refused to allow her to view their file. The district judge expressed some frustration with the public defender's apparent refusal to turn over "the documents,"[1] noting that they were not privileged or confidential because "it was done in open court by a state district judge." J.A. 63. Thus, the district judge continued sentencing to May 12, 2008, in part to afford the government an adequate opportunity to locate documents related to Martinez-Melgar's participation in the STEP program.

---

[1]While there is some ambiguity as to which "documents" the district judge was referring to, it appears from the record that he was alluding to the deferred prosecution agreement and statement of responsibility previously referenced by the probation officer.

At the May 12, 2008 hearing, the government's counsel informed the district judge that he had been unable to locate any such documents. He further stated that the public defender's file had revealed that Martinez-Melgar was represented by private counsel at the time that he allegedly entered the STEP program, and the government's counsel apparently decided not to contact this attorney to attempt to retrieve copies of the statement of responsibility and the deferred prosecution agreement. Instead, at the May 12, 2008 hearing, the government presented testimony from Steve Ward, the Mecklenburg County assistant district attorney. Ward testified that he was the "architect" of Mecklenburg County's STEP program, that he was its coordinator from 1994 until 1998, and that at the time of the hearing he sat on the management committee that oversees the program. Accordingly, while he had no personal knowledge whatever of Martinez-Melgar's case or his alleged participation in the STEP program, Ward testified to the structure and procedures of the STEP program as he understood them. Specifically, Ward described STEP as a "pretrial diversion program." J.A. 84. With respect to the requirements to enter the program, Ward testified as follows:

> [An eligible defendant must] sign a contract with the court that is signed by the district court judge, the prosecutor, defense counsel, and the defendant agreeing to abide by all the terms and conditions of the program. And they are also required to sign a Statement of Responsibility, or an admission of guilt, where they admit that they possessed the drugs in question.
>
> Q: And what is done—the Statement of Responsibility, what is done with that document?
>
> A: The Statement of Responsibility is usually retained by the defense attorney pending the outcome of the case. It is not filed in the court file, nor

> is it kept by the prosecutor. The contract is put in the
> court file and a copy is given to all parties.

J.A. 86-87. Ward further explained that upon signing the contract and the statement of responsibility, the defendant enters the STEP program, which entails attending meetings, receiving counseling, and appearing in court every two weeks to report on compliance or noncompliance with the program's rules. According to Ward, if a defendant fails to comply with the program terms, he is removed from the program and defense counsel is ordered to turn the statement of responsibility over to the prosecutor for use in prosecuting the defendant. On the other hand, if a defendant successfully completes the program, then the "charges would be dismissed and the documentation [would remain] . . . where it has been all along." J.A. 87. Finally, Ward noted that "[a]ll of this is contingent on everyone doing what they are supposed to do, and there may be a circumstance, a rare one, where someone forgets to get the Statement of Responsibility signed." J.A. 87.

Following Ward's testimony, Martinez-Melgar's attorney argued that the government had failed to show (i) that Martinez-Melgar participated in the STEP program or (ii) that he made an admission of guilt. The attorney further objected to the use of computerized printouts from the North Carolina Offender Information System as evidence of Martinez-Melgar's cocaine possession charge and his subsequent participation in the STEP program.

The district judge overruled these objections and concluded that the one-point criminal history enhancement was appropriate. In support of his ruling, the district judge found that the computerized printouts proved (i) that Martinez-Melgar was charged in North Carolina state court with possession of cocaine, (ii) that he entered the STEP program on January 13, 2004 as a result of this charge, (iii) that he was transferred to unsupervised probation on November 23, 2004, and (iv) that the charge of cocaine possession was ultimately dismissed on

May 9, 2006. J.A. 97-98. Moreover, the district judge found that Ward's testimony showed that, in order to enter the STEP program, Martinez-Melgar must have signed a statement of responsibility, which, he held, constituted an admission of guilt. The district judge did not explicitly rule on the objection relating to whether Martinez-Melgar was on probation at the time of the offense conduct. Instead, he calculated a guidelines sentencing range that included one criminal history point attributable to the prior sentence and two criminal history points attributable to committing the offense while under a criminal justice sentence. When the district judge asked if the parties agreed to the calculation, Martinez-Melgar's counsel said that she did, "subject to my objections." J.A. 98. Yet, at no point during the course of the May 12, 2008 hearing was the objection to the finding that Martinez-Melgar was on probation at the time of the offense conduct specifically raised, nor was any objection raised with respect to any failure by the district judge to make a factual finding to that effect. The district judge proceeded to calculate an offense level of 22, a criminal history category of II, and a guideline sentencing range of 46 to 57 months on the first count and 60 months on the second count, which was statutorily required to run consecutively to the sentence imposed on the first count. Accordingly, he sentenced Martinez-Melgar to a total of 117 months in prison.

## II.

The issue on appeal is whether the district court properly assessed three criminal history points in connection with Martinez-Melgar's alleged participation in the STEP program. Martinez-Melgar argues that the sentencing court erred in assessing the three criminal history points pursuant to U.S.S.G. §§ 4A1.1(c) and 4A1.1(d) because his participation in the program did not result from an admission of guilt in a judicial proceeding in open court, as required by the guidelines. In the alternative, he contends that the sentencing court erred in assessing two of those three criminal history points

pursuant to § 4A1.1(d) because he was no longer under a criminal justice sentence at the time of the offense of conviction. Pure questions of law related to guidelines determinations are reviewed *de novo*, while factual findings at sentencing are reviewed for clear error. *See United States v. Dove*, 247 F.3d 152, 155 (4th Cir. 2001); *see also United States v. Moreland*, 437 F.3d 424, 433 (4th Cir. 2006) (applying the same standard post-*Booker*).

The analysis properly begins with the Sentencing Guidelines provisions governing criminal history, which require assessing one criminal history point for a "prior sentence," U.S.S.G. § 4A1.1(c), and two additional points if the offense of conviction is committed "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status," *Id.* § 4A1.1(d). The terms "prior sentence" and "criminal justice sentence" are defined to include "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense."[2] *Id.* § 4A1.2(a)(1). The guidelines further clarify that "[d]iversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted," but that a "diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding is counted" as a sentence even if a conviction is not formally entered. *Id.* § 4A1.2(f). Importantly, the commentary to § 4A1.2 further states that a diversionary disposition qualifies as a "prior sentence" only if it results from "a judicial determination of guilt or an admission of guilt in open court." *Id.* § 4A1.2 cmt. 9. Thus, in order to qualify as a prior sentence and as a criminal justice sentence within the meaning of §§ 4A1.1(c) and 4A1.1(d), the sentence must result from (i)

---

[2]"Criminal justice sentence" is defined as a subset of a "prior sentence," namely, as a prior sentence having a custodial or supervisory component. Thus, a term of probation would normally qualify as a "criminal justice sentence" and as a "prior sentence." *See* U.S.S.G. § 4A1.1 cmt. 4.

a finding or an admission of guilt (ii) in a judicial proceeding (iii) in open court.

Martinez-Melgar first argues that the district court erred as a matter of law in two respects. First, he argues that a qualifying prior sentence requires formal entry of a plea or of a judgment of conviction. This argument is without merit. Indeed, the guidelines plainly include within the definition of a prior sentence diversionary dispositions resulting from an "admission of guilt in open court." *Id.* § 4A1.2 cmt. 9. Martinez-Melgar's construction of § 4A1.2 would impermissibly read this language out of the guidelines. Therefore, such an interpretation is contrary to the plain meaning of § 4A1.2.[3]

Second, Martinez-Melgar argues that the district judge did not make the required factual finding that the alleged admission occurred in a judicial proceeding in open court. Yet, it is clear from the record that the district judge made precisely such a finding. Indeed, during the April 14, 2008 hearing, the district judge repeatedly referred to the "documents," including the statement of responsibility and the deferred prosecution agreement, as having been "put on the record in open court." J.A. 63; *see also* J.A. 61, 64. Thus, having determined that the district court did make the requisite factual finding, we next turn to the question whether that finding was clearly erroneous.

It is well-settled that in reviewing a district court's factual findings for clear error, the court of appeals does not simply substitute its judgment for that of the district court. Instead, a factual determination may be found to be clearly erroneous only "when although there is evidence to support [the district

---

[3]*See United States v. Jones*, 448 F.3d 958, 960-61 (7th Cir. 2006) (concluding that a stipulation to "the facts supporting the charge" resulting in a disposition of supervision was sufficient to constitute a prior sentence under § 4A1.2, even in the absence of a formal plea or judgment of conviction).

court's finding], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). And in this respect, a reviewing court may only find clear error where the factual determinations "'are not supported by substantial evidence.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 106 (4th Cir. 1995) (quoting *U.S. Gypsum Co.*, 333 U.S. at 361). Put another way, clear error occurs when a district court's factual findings "are against the clear weight of the evidence considered as a whole." *Miller v. Mercy Hosp., Inc.*, 720 F.2d 356, 361 (4th Cir. 1983). Because the district court's determination, by a preponderance of the evidence, that Martinez-Melgar admitted his guilt in a judicial proceeding in open court is unsupported by the record, we hold that this finding was clearly erroneous.

To begin with, it is clear that district courts may properly rely on circumstantial evidence in the course of making factual findings for purposes of calculating the correct advisory guidelines range. In other words, there is no rule that a transcript, signed statement, or eyewitness testimony need be presented in order for a sentencing court to conclude that the defendant admitted his guilt in a judicial proceeding in open court. More specifically, if evidence is presented that a defendant previously participated in a specific diversionary program, and if there is further evidence presented that the specific program requires an admission of guilt in a judicial proceeding in open court as a prerequisite to entry, then, in the absence of any evidence to the contrary, a sentencing court could reasonably conclude, by a preponderance of the evidence, that the defendant admitted his guilt in a judicial proceeding in open court. In such an event, a court must assess the additional criminal history point accordingly. Yet, as always, the inferences drawn from evidence by the trier of fact must be reasonable in light of the record taken as a whole. *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 359-60 (4th Cir. 2001).

The district judge in this case properly relied on computerized printouts from the North Carolina Offender Information System to support his findings (i) that Martinez-Melgar was charged with cocaine possession and (ii) that as a result he enrolled in, and successfully completed, the Mecklenburg County STEP program. The district judge committed no error in reaching these conclusions. Indeed, sentencing courts routinely rely on similar printouts of computerized records in making such findings for purposes of calculating guidelines ranges, and there is no support in our case law for Martinez-Melgar's contention that courts may not rely on such records in these circumstances. Specifically, Martinez-Melgar's argument that the district court erred in considering evidence other than what is permitted by *Taylor v. United States*, 495 U.S. 575, 602 (1990), and *Shepard v. United States*, 544 U.S. 13, 16 (2005), misapprehends the significance of those opinions. Those cases concerned whether the substantive content of a prior conviction qualified the defendant for an Armed Career Criminal Act enhancement pursuant to 18 U.S.C. § 924(e), not the conceptually distinct issue of whether a conviction had occurred at all. Similarly, in *United States v. Maroquin-Bran*, ___ F.3d ____, 2009 WL 3720864, at *3 (4th Cir. Nov. 9, 2009), we held that the district court could only consider "*Shepard*-approved documents" for purposes of determining whether the defendant's prior conviction constituted a "drug trafficking offense" that qualified him for a guidelines enhancement. Again, the issue in *Maroquin-Bran*, as in *Taylor* and *Shepard*, was not whether the prior conviction had occurred, but rather the issue was the nature of the prior offense. To the contrary, in this case the substantive content of Martinez-Melgar's alleged admission is not in issue; instead, the question is whether the district judge clearly erred in concluding that Martinez-Melgar made an admission in open court in a judicial proceeding. Thus, in a case where, as here, there is no indication whatever that the state records are inaccurate, sentencing judges may reasonably conclude that the records are accurate for purposes of guidelines calculations.

In concluding that Martinez-Melgar admitted his guilt in a judicial proceeding in open court, the district judge relied on statements of a federal probation officer and the testimony of Steve Ward, the Mecklenburg County assistant district attorney. While the conclusion that Martinez-Melgar admitted his guilt is supported by the probation officer's assertions and Ward's testimony, neither statement supports the conclusion that he was required to do so, and in fact did so, in a judicial proceeding in open court. Specifically, the probation officer's statements about deferred prosecution program procedures referred not to the Mecklenburg County STEP program, but instead to North Carolina's "general deferred prosecution program," with which she was familiar from having been a North Carolina state probation officer at some time in the past. J.A. 59. Thus, the probation officer's assertion that, in the state's "general deferred prosecution program," a "statement admitting [a defendant's] guilt to the offense . . . was handed to the judge, along with the Deferred Prosecution Agreement, for review" is only probative of the Mecklenburg County STEP program procedures to the extent that the record allows an inference that the same procedure was followed in both programs. J.A. 58.

Yet, the record refutes such an inference. Indeed, it is pellucidly clear from the record that the STEP program procedures differ from the general state deferred prosecution program procedures in a manner that does not permit the inference that defendants are required to admit their guilt in a judicial proceeding in open court in order to be enrolled in the STEP program. While the probation officer stated that under the general North Carolina deferred prosecution program, the statements of responsibility are retained in the defendant's probation file, she also said that Ward informed her that under the STEP program, a deliberate choice was made not to keep the statements of responsibility in the probation file because "they didn't want the admission of guilt floating around in all these different files." J.A. 59. Moreover, in his testimony, Ward distinguished between (i) the STEP program contract, which is

signed by the judge, prosecutor, defense counsel, and the defendant, and placed in the court file, and (ii) the statement of responsibility, which is "usually retained by the defense attorney pending the outcome of the case, . . . [and] is not filed in the court file, nor is it kept by the prosecutor." J.A. 86–87. Finally, Ward stated that upon successful completion of the program, the charges would be dismissed and "the documentation [would remain] . . . where it has been all along." J.A. 87. Only if the defendant is removed from the program prior to successful completion will defense counsel turn over the statement of responsibility to the prosecutor who, presumably, would file it in court.

Ward's testimony therefore made it clear that the STEP program does not follow the same procedures as the general North Carolina deferred prosecution program with respect to statements of responsibility. Moreover, it is clear that in creating the STEP program, measures were implemented to address concerns that a successful STEP program participant's statement of responsibility would still be "floating around" after the charges were dismissed. Thus, the probation officer's statement regarding the general North Carolina program procedures are not probative of the STEP program procedures that may have been followed in Martinez-Melgar's case. Indeed, to the extent that any inference may be drawn from Ward's testimony concerning whether defendant's admission of guilt required for participation in the STEP program ordinarily occurs in a judicial proceeding in open court, the only permissible inference is that it does not.[4] Accordingly, the district judge clearly erred in concluding, on the

---

[4]The inference that the STEP program does not require an admission of guilt in a judicial proceeding in open court is further supported by the North Carolina probation statute, which only requires "approval of the court, pursuant to a written agreement with the defendant" for placement of a defendant on probation in connection with enrollment in a drug court treatment program. N.C. Gen. Stat. § 15A-1341(a2). The statute does not require a defendant to admit guilt to participate in a drug court treatment program. *Id.*

basis of the record before him, that Martinez-Melgar's admission of guilt occurred in a judicial proceeding in open court. It follows that the criminal history points should not have been assessed.

Martinez-Melgar also objects to the guidelines range calculation on the ground that the district judge failed to make a required factual finding that he was on probation at the time of the offense of conviction, February 2, 2006. Because the error addressed above requires that the sentence be vacated, this issue need not be decided at this time. Nonetheless, for purposes of offering appropriate guidance to the district court on remand, it is worth noting that, while it appears that the district judge found that Martinez-Melgar was still on probation when the offense conduct occurred,[5] the record does not support this conclusion. This is particularly true because the North Carolina probation statute limits deferred prosecution probation periods to a maximum of two years, a time period that had expired on or before January 13, 2006, well before the offense of conviction occurred on February 2, 2006. *See* N.C. Gen. Stat. § 15A-1342(a). Thus even if, on remand, the government is able to prove that Martinez-Melgar's participation in the STEP program resulted from an admission of guilt in a judicial proceeding in open court, it is far from clear that it can be shown that Martinez-Melgar was still on probation from the STEP program at the time of the offense of conviction.

---

[5]Specifically, the district judge found that Martinez-Melgar entered the STEP program on January 13, 2004, "and ultimately on November 23, 2004, was transferred to unsupervised probation, and on May 9th, 2006, the charge of possession of cocaine, which is the key charge we're talking about in paragraph 23 of the Presentence Report, was dismissed." J.A. 97. The obvious inference from this statement is that the district judge found that Martinez-Melgar was on unsupervised probation until May 9, 2006, the date on which the charge was dismissed.

## III.

For the foregoing reasons, we vacate Martinez-Melgar's sentence and remand to the district court for resentencing consistent with this opinion.

*VACATED AND REMANDED*