**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-4051**

UNITED STATES OF AMERICA

        Plaintiff - Appellee

v.

CORNELIUS MAYBERRY, a/k/a Red

        Defendant - Appellant

Appeal from the United States District Court for the District of South Carolina, at Spartanburg. Bruce H. Hendricks, District Judge. (7:18-cr-00767-BHH-1)

Argued: September 27, 2024                    Decided: January 7, 2025

Before AGEE and HARRIS, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Keenan wrote the opinion, in which Judge Agee and Judge Harris joined.

**ARGUED:** John LaFitte Warren, III, LAW OFFICES OF BILL NETTLES, Columbia, South Carolina, for Appellant. Ethan A. Sachs, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Nicole M. Argentieri, Acting Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Adair F. Boroughs, United States Attorney, Kathleen Stoughton, Appellate Chief, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

BARBARA MILANO KEENAN, Senior Circuit Judge:

This case involves a narcotics "sting" operation. The primary issues are whether the police had probable cause to arrest the defendant and whether the defendant abandoned his backpack, which later was found to contain over four pounds of methamphetamine.

The defendant, Cornelius Mayberry, entered a conditional guilty plea in the district court to (1) possession with the intent to distribute methamphetamine and fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(C) and 18 U.S.C. § 2; (2) possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2; and (3) assault and resistance to official search or seizure, in violation of 18 U.S.C. § 2231(a). Mayberry reserved in his plea agreement the right to appeal the court's denial of two motions, a motion to suppress the government's search of his backpack and a supplemental motion to suppress his post-arrest statements. Mayberry now appeals the court's denial of these suppression motions, as well as the court's denial of his motion to withdraw his guilty plea before his sentencing. Because we conclude that the district court did not err in denying these motions, we affirm Mayberry's conviction.

I.

A.

2

At 4:00 a.m. on May 3, 2018, a South Carolina Highway Patrol officer stopped the driver of a car for speeding.[1]   The officer searched the car and found guns, methamphetamine, and $20,000 in cash.  Josh Davis was a passenger in the car at the time.  Davis told the officer, who was joined at the scene by other state and federal officers, that he was going to a Red Roof Inn in Gaffney, South Carolina, to purchase four pounds of methamphetamine from a man he knew as "Red."

Davis stated that he had purchased drugs from "Red" at this hotel on another occasion.  When the officers showed Davis a photograph of Roy Phillips, a known drug trafficker who used the name "Red," Davis identified Phillips as the man from whom he previously had purchased drugs.  At that point, Davis agreed to cooperate with the officers in their investigation of "Red."

The officers sent "Red" a text message from Davis's cell phone saying that Davis was on his way to the Red Roof Inn.  Meanwhile, between 10 and 15 law enforcement officers were conducting surveillance at that hotel.  A short time later, officers saw a blue pick-up truck enter and park in the hotel parking lot.  At that time, Davis received a text message from "Red" saying that he had arrived and needed access to the hotel.   Davis responded to "Red" with a text message to "come on in" and told "Red" that Davis was on the second floor.

---

[1]  Because we view the evidence in the light most favorable to the government, the prevailing party in the district court, we recite the facts in accordance with the officers' testimony at the suppression hearing. *United States v. Hill*, 852 F.3d 377, 379 n.1, 381 (4th Cir. 2017).

Almost immediately, officers observed the driver of the blue truck get out of his vehicle with a young child and enter the side door of the hotel. The driver, later identified as Cornelius Mayberry, carried a distinctive red, white, and blue "Tommy Hilfiger" backpack. Two police officers soon entered the hotel through this same side door, which led to an interior stairwell. The officers climbed to the second floor and entered the second-floor hallway by opening a door. Upon entering the hallway, the officers saw Mayberry and the child about 15 to 20 feet down the hall, walking away from the same interior stairwell door. No one else was in the hallway. Announcing their presence as "police," the officers arrested Mayberry.

Around this time, another police officer (the third officer) entered the hotel and walked up the same set of interior stairs. On the landing next to the closed door to the second-floor hallway, the third officer observed a red, white, and blue "Tommy Hilfiger" backpack that looked like the one Mayberry had been carrying. Upon opening the door to the second-floor hallway, the third officer saw that two other officers had detained Mayberry. The third officer then removed the backpack to the parking lot, where a dog trained in narcotics detection "alerted" on the backpack. Officers searched the backpack at that point and found two kilograms of methamphetamine (about 4.4 pounds).

While in police custody, Mayberry waived his right to remain silent and to consult with an attorney, agreed to speak with law enforcement, and allowed the officers to search his cell phone. The officers observed that Mayberry had referred to himself as "Red" in the text messages on his phone, including in the messages he had sent to Davis. Mayberry admitted that he had gone to the Red Roof Inn to sell two kilograms of methamphetamine.

4

B.

Mayberry ultimately was charged in a six-count indictment.[2]  The charged offenses were (1) possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(e); (2) possession with intent to distribute methamphetamine and fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(C) and 18 U.S.C. § 2; (3) possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2; (4) conspiracy to possess with intent to distribute methamphetamine and fentanyl, in violation of 21 U.S.C. § 846; (5) assault and resistance to official search or seizure, in violation of 18 U.S.C. § 2231(a); and (6) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

Mayberry later filed a motion to suppress evidence obtained from his backpack, arguing that the officers lacked probable cause to arrest him and to search his backpack. About one month after the filing of this motion, at Mayberry's request, the district court removed Mayberry's attorney.  His newly appointed attorney filed another motion to suppress challenging the search of the backpack.  After conducting a hearing, a magistrate judge recommended denying the motion.  Mayberry filed objections to the magistrate judge's recommendation.

The district court overruled Mayberry's objections and denied Mayberry's motion to suppress.  The court held that the warrantless search of Mayberry's backpack was valid

---

[2] After Mayberry's arrest at the hotel, Mayberry's wife consented to a search of their shared home, where officers found methamphetamine, heroin, an electronic scale, ammunition, and firearms.  Later, Mayberry attempted to resist arrest and injured a police officer.

5

because Mayberry intentionally had abandoned it.  In its order, the court observed that Mayberry was not required to have made any claim of ownership over the backpack to avoid a finding of abandonment, but also noted that the court considered Mayberry's failure to claim ownership among the "constellation of circumstances" tending to show that Mayberry intended to abandon the backpack.

After the district court issued its order, Mayberry filed a supplemental motion to suppress, arguing that his arrest was not supported by probable cause.  Mayberry asserted that Davis's "tip" providing information about the impending drug transaction was unreliable, because Davis had identified someone in a photograph other than Mayberry as being "Red."  The court denied the motion without conducting an additional hearing, finding that Davis's misidentification was "immaterial."  The court explained that the officers had probable cause to conclude that Mayberry was engaged in an ongoing drug transaction based on the real-time communication between Davis and Mayberry, the arrival of the blue truck at the hotel, and Mayberry's possession of the backpack at the time he entered the hotel.

After the court denied Mayberry's motions to suppress, he entered into a plea agreement, preserving the right to appeal the rulings on his suppression motions.  The district court conducted a plea hearing under Federal Rule of Criminal Procedure 11.  The court asked Mayberry a series of questions, including whether he was "satisfied with the way in which [his attorney] ha[d] advised [him] and represented [him]."  Mayberry did not respond to this question.  Instead, Mayberry and his attorney spoke privately, and his attorney answered that he and Mayberry "had a fairly rocky road over the last few weeks,"

6

had "not seen eye-to-eye on everything," and "had differences in the past."  But Mayberry's attorney also stated that he "believe[d] that [Mayberry] would be comfortable stating that as it stands today[,] he feels satisfied with me."

The court and Mayberry proceeded to engage in an extended exchange, which was interrupted by opportunities for Mayberry and his counsel to have additional private conversations.  The court told Mayberry that "it's up to you … if you want to proceed."  The court also stated that it did not "mean to rush" Mayberry and "really want[ed] [him] to take [his] time" and "talk to [his] lawyer."  Mayberry's attorney responded that "I think that as it stands under the circumstances, Mr. Mayberry is satisfied with what has happened" but "does not want to waive any ineffective assistance of counsel claims."  When the court asked Mayberry whether he had "any complaint right now that [he] want[ed] to make to the [c]ourt about [his] lawyer," Mayberry answered "no."  The court confirmed that Mayberry understood his rights and confirmed several times that Mayberry wanted to plead guilty to the three charges set forth above.  After this interchange, the court accepted Mayberry's guilty plea.  The government dismissed the three remaining charges against Mayberry.

About two months later, Mayberry filed a motion to withdraw his guilty plea.  At that time, his attorney asked to be removed as counsel, and the court appointed new counsel.  After Mayberry's new attorney filed a supplemental brief on the motion to withdraw the guilty plea, the government opposed the motion. The district court conducted a hearing on the motion and denied Mayberry's request.  The court sentenced Mayberry to serve a term of 414 months' imprisonment.  Mayberry appeals.

7

II.

Mayberry makes three arguments on appeal. He contends that (1) the district court erred in denying his motion to withdraw his guilty plea, (2) the officers lacked probable cause to arrest him in the hallway of the Red Roof Inn, and (3) the district court erred in denying his motion to suppress the warrantless search of his backpack. We address each argument in turn.

A.

We turn first to Mayberry's argument that the district court erred in refusing to allow him to withdraw his guilty plea. We review for abuse of discretion the district court's decision denying Mayberry's motion. *United States v. Battle*, 499 F.3d 315, 319 (4th Cir. 2007). A defendant awaiting sentencing does not have an "absolute right to withdraw a guilty plea." *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003) (citation omitted). Under Rule 11, a defendant may withdraw his guilty plea prior to sentencing *only* if he can "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). As Mayberry acknowledges, the district court properly conducted its Rule 11 colloquy and, thus, Mayberry must overcome "a strong presumption that [his guilty] plea is final and binding." *Bowman*, 348 F.3d at 414 (citation omitted).

We have articulated six non-exclusive factors for the district court to consider in ruling on a defendant's motion to withdraw a guilty plea:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will

8

cause prejudice to the government, and (6) whether it will inconvenience
the court and waste judicial resources.

*United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991) (*Moore* factors).  On the record

before us, the first and fourth *Moore* factors are the most important to our analysis.  *See*

*United States v. Sparks*, 67 F.3d 1145, 1154 (4th Cir. 1995).  However, the district court

concluded that none of those six factors weighed in Mayberry's favor.

On appeal, Mayberry primarily focuses on the first and fourth *Moore* factors.[3]

Based on the timeline before us, we consider these arguments in reverse order.  Citing

*Moore* factor four, Mayberry contends that his prior counsel provided him with ineffective

assistance by "fail[ing] to provide him with" certain discovery materials, including

"[e]vidence presented to the grand jury, affidavits in support of the arrest warrants, any

information regarding K-9s that alerted to the packages including the logs of the K-9s,

certificates, [and] training."  He further contends that the court should have held an

evidentiary hearing regarding these requests.  Additionally, under *Moore* factor one,

Mayberry maintains that the Assistant United States Attorney prosecuting his case (the

prosecutor) sent his attorney "predicted guideline sentence calculations" that were

inaccurate and constituted a false promise that "induced" Mayberry to plead guilty.  We are

not persuaded by these arguments.

A well-established rule governs our consideration of a defendant's argument that he

should have been allowed to withdraw his guilty plea because he did not receive close

---

[3] We have reviewed Mayberry's arguments related to the other *Moore* factors, along
with the record, and conclude that the district court properly held that none of the factors
weighed in Mayberry's favor.

9

assistance of counsel.    In such circumstances, the defendant must demonstrate that counsel's performance was deficient "and that, but for counsel's errors, the defendant would not have pled guilty and would instead have insisted on proceeding to trial." *United States v. Faris*, 388 F.3d 452, 459 (4th Cir. 2004).    Under this standard, a defendant must show that his counsel's error made a material difference in his decision to plead guilty.  *Id.*

In the present case, Mayberry does not argue or explain why he would not have pleaded guilty had he been provided the particular discovery information cited in his argument.  *See id.*  In view of his silence on this issue, Mayberry is essentially asking us to surmise that had he been given access to the requested discovery materials, his assessment of the weight of the evidence against him would have been materially different and would have caused him to proceed to trial.  But it is not our role to supply arguments that Mayberry has not made.  Further, we do not discern anything in the record that required the court to hold an evidentiary hearing on Mayberry's request for discovery materials.   Based on the record before us, we conclude that the district court did not abuse its discretion when it held that Mayberry failed to demonstrate that his attorney's alleged errors had a material impact on his decision to plead guilty.

Mayberry's next argument, that he was "induced" to plead guilty based on the promise of a specific sentencing range rendering his plea involuntary, also is unconvincing. To support this assertion that he was provided incorrect sentencing information, Mayberry cites an email from the prosecutor to Mayberry's attorney that included the prosecutor's "notes" on an anticipated sentencing guidelines range if Mayberry pleaded guilty to all six counts.  Notably, however, the prosecutor also encouraged Mayberry's counsel to seek an

expert guidelines calculation and explained that if Mayberry "doesn't want to plead, that's totally fine with me." We find nothing in this email that suggests an improper assurance or promise, let alone one that would have induced Mayberry to plead guilty. Thus, we conclude that the district court did not err in determining that the prosecutor's email did not affect the voluntary nature of Mayberry's plea. *Cf. United States v. Hammerman*, 528 F.2d 326, 330–31 (4th Cir. 1975) (describing when a prosecutor's "prediction" might cause reliance and become "an essential element of the plea bargain").

In sum, the district court extensively questioned Mayberry at the plea hearing to ensure that he understood the significance of changing his plea to "guilty." The court repeatedly told Mayberry to "take [his] time" and gave him multiple opportunities to consult with his attorney. The court also confirmed that Mayberry had gone over with his attorney the indictment, the plea agreement, the possible sentencing range, and his "case in general." Only after doing so did the district court accept Mayberry's guilty plea. Given this extensive questioning by the district court and Mayberry's failure to provide a fair and just reason for withdrawing his plea, we hold that the district court did not abuse its discretion in denying Mayberry's motion to withdraw his plea. *See Battle*, 499 F.3d at 319.

## B.

Mayberry next challenges the district court's denial of his motion to suppress the statements he made after his arrest. Mayberry asserts that the district court should have suppressed these post-arrest statements because the police lacked probable cause to arrest him. In particular, Mayberry contends that the information provided by Davis and the investigation that resulted from this information was insufficient to support the court's

11

probable cause finding. According to Mayberry, Davis's "tip" was rendered unreliable at the moment he misidentified "Red" in the photograph shown to him by the police. Mayberry further contends that because the officers failed to obtain an independent verification of the information supplied by Davis, the officers lacked probable cause to arrest him.[4] We disagree with Mayberry's argument.

We review de novo the district court's holding that Mayberry's arrest was supported by probable cause. *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004). The court's underlying factual findings are subject to review for clear error. *See United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021) (citation omitted). "Probable cause to justify an arrest [requires] facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing … that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 US 31, 37 (1979) (internal quotation marks omitted). A finding of probable cause does not require an actual showing of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Instead, "a fair probability" "or substantial chance of criminal activity" is sufficient to establish probable cause. *Id.* at 238, 243 n.13; *United States v. Blakeney*, 949 F.3d 851, 859 (4th Cir. 2020).

---

[4] Mayberry characterizes the information provided by Davis as a "tip," and cites in support cases in which police received information from anonymous sources or information from people who were not actual participants in the impending criminal activity. Taking this approach, Mayberry misperceives the import of Davis's role in the events that unfolded. Davis was no mere tipster but cooperated with the police in setting up the transaction and continued to communicate with "Red" up until the moment of the arrest. So, the cases on which Mayberry relies are inapposite because they do not address the type of conduct involved here.

12

In determining whether the officers had probable cause to arrest Mayberry, we consider the totality of the circumstances leading to that arrest. *See Gates*, 462 U.S. at 230–31, 233; *United States v. Myers*, 986 F.3d 453, 456–57 (4th Cir. 2021). Initially, we observe that Mayberry does not contest any of the district court's factual findings relating to his arrest, but argues that the evidence before the court was insufficient to support its probable cause determination. After reviewing the record, we hold that the district court did not err in determining that the police had probable cause to arrest Mayberry.

The officers knew that Davis had been found possessing methamphetamine and $20,000 in cash. Davis told the officers that he was travelling to a Red Roof Inn in Gaffney, South Carolina, to purchase four pounds of methamphetamine from a man named "Red." Davis also stated that he previously had purchased drugs from "Red" at this hotel. While Davis was with the officers, they communicated with "Red" using Davis's phone. A short time later, the officers observed Mayberry arrive at the Red Roof Inn. When an officer sent "Red" a text message from Davis's phone instructing "Red" to "come on in" to the second floor of the hotel, Mayberry entered the hotel carrying a backpack and proceeded to the second floor. No one else, other than the child who accompanied Mayberry, was in the second-floor hallway when officers arrested Mayberry.

These facts provided a basis for the officers to conclude that there was a probability that Mayberry was engaging in criminal activity, namely, that Mayberry was present at the hotel to engage in a narcotics transaction. *See Gates*, 462 U.S. at 238, 243 n.13; *Myers*, 986 F.3d at 456–58. And contrary to Mayberry's assertion, Davis's improper identification of Phillips as "Red" did not render the above information unreliable or insufficient to

13

establish probable cause. The record is silent regarding any differences in appearance between Phillips and Mayberry, and so it is impossible to determine to what extent, if any, Davis's misidentification might have affected his credibility. Moreover, the accuracy of the information supplied by Davis was supported independently by the officers' real-time observations of Mayberry after they had exchanged text messages with "Red" using Davis's phone. Thus, the information that Davis provided to the officers was detailed and was strongly corroborated by Mayberry's own actions at the Red Roof Inn. Accordingly, we conclude that the district court did not err in denying Mayberry's supplemental motion to suppress because the officers had probable cause to arrest him at the hotel. *See Humphries*, 372 F.3d at 657.

## C.

We next consider the issue whether the district court erred in denying Mayberry's motion to suppress the warrantless search of his backpack. Mayberry contends that neither his words nor his actions showed that he intended to abandon the backpack when he left it behind the door in the stairwell. He argues that he maintained a reasonable expectation of privacy in the backpack even when he moved away from it down the second-floor hallway. Mayberry also maintains that the district court's emphasis on his "failure to mention the backpack or 'make any claim of ownership'" improperly "require[d]" him to "affirmatively claim ownership of" the backpack to defeat a finding of abandonment. Mayberry asserts that this purported requirement improperly forced him to "sacrifice" his "right to remain silent." We disagree with Mayberry's arguments.

14

In considering the district court's ruling on the motion to suppress the evidence seized from Mayberry's backpack, we review the district court's legal determinations de novo and its factual findings for clear error. *United States v. Small*, 944 F.3d 490, 502 (4th Cir. 2019) (citing *United States v. Lull*, 824 F.3d 109, 114 (4th Cir. 2016)). We have explained that, in the context of a motion to suppress, a trial court's "determination that a reasonable expectation of privacy does or does not exist 'is a legal conclusion,'" subject to de novo review. *United States v. Ramapuram*, 632 F.2d 1149, 1155 (4th Cir. 1980) (quoting *United States v. Vicknair*, 610 F.2d 372, 379 (5th Cir. 1980)). We review the factual findings underlying the district court's legal conclusion for clear error. *Id.*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To safeguard this right, courts have recognized an exclusionary rule under which "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347–48 (1974); *see Small*, 944 F.3d at 501. Generally, warrantless searches and seizures are considered "*per se* unreasonable under the Fourth Amendment." *Small*, 944 F.3d at 501–02 (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citation omitted)). But this general requirement "is subject to a few specifically established and well-delineated exceptions." *Id.* (quoting *Gant*, 556 U.S. at 1710).

One such exception to the warrant requirement arises when a defendant has abandoned the property at issue. *See United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995). A person who voluntarily abandons an item of property may not seek to suppress

15

evidence obtained as a result of the seizure and search of that property. *Id.*; *Small*, 944 F.3d at 502; *United States v. Frazer*, 98 F.4th 102, 114 (4th Cir. 2024).

"Abandonment should not be casually inferred." *Small*, 944 F.3d at 502. A finding of abandonment does not require that "all formal property rights have been relinquished, but [rests on] whether the complaining party retains a reasonable expectation of privacy in the articles alleged to be abandoned." *Id.* (quoting *United States v. Haynie*, 637 F.2d 227, 237 (4th Cir. 1980) (citation omitted)).

"In assessing whether a defendant" abandoned certain property, "a reviewing court must perform 'an objective analysis' and decide whether the defendant intended to abandon the item, and also decide whether his intention can be inferred from 'words spoken, acts done, and other objective facts.'" *Frazer*, 98 F.4th at 114 (quoting *Small*, 944 F.3d at 502). When making an abandonment finding, courts typically consider the circumstances of the defendant's disassociation from the property including (1) his physical actions and (2) any denial or disclaimer of ownership over the property. *United States v. Crumble*, 878 F.3d 656, 659–60 (8th Cir. 2018); *United States v. Garzon*, 119 F.3d 1446, 1452 (10th Cir. 1997); *see also Frazer*, 98 F.4th at 114–15. "[T]here are temporal limitations on evidence used in [a court's] analysis;" a court may only consider "objective information available to officers at the time they performed the warrantless search." *Small*, 944 F.3d at 502.

Crucially, we have concluded that a district court's determination that a defendant "abandoned his privacy interest" in certain property is "a finding of fact." *United States v. Ferebee*, 957 F.3d 406, 416 (4th Cir. 2020); *see also United States v. Stevenson*, 396 F.3d 538, 544 (4th Cir. 2005) ("In denying [the defendant's] motion to suppress, the district

16

court found as [a] fact[] that … [he] had 'no intention of returning to his apartment.'"). This is true even though a well-supported factual finding of abandonment necessarily answers the ultimate legal question whether a defendant retains a reasonable expectation of privacy in the property at issue. *See Leshuk*, 65 F.3d at 1111 ("[A] person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property."). Because a finding of abandonment is factual in nature, we will only reverse a district court's finding in this regard if it was "against the *clear weight* of the evidence considered as a whole." *United States v. Martinez-Melgar*, 591 F.3d 733, 738 (4th Cir. 2010) (citation omitted) (emphasis added). So, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it" even if we are "convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74 (1985).

Applying these principles, we consider the entire record relating to the district court's abandonment finding. In explaining its ruling, the district court stated that Mayberry intentionally abandoned the backpack "when he left it in the closed common stairwell, exited the stairwell into the second-floor hallway, and walked 15–20 feet away from it with no indication [of] an intent to return."[5]

---

[5] The district court also relied on Mayberry's post-arrest statement, in which he told the officers that he placed the backpack in the hallway because he feared being robbed. We agree with Mayberry that the district court erred in considering this statement in its (Continued)

17

The record before us shows that Mayberry voluntarily left his backpack in the hotel's common stairwell and walked away from the bag, which remained behind a closed door as Mayberry proceeded a distance down the second-floor hallway. The backpack was left in a location in which anyone could have had access to it without the use of a hotel key. The backpack was not hidden from observation in any way. This evidence showed that Mayberry made no attempt to protect the bag or its contents from inspection by others; nor did he take any action indicating an intent to retrieve the backpack later from that location. Instead, he simply left the bag unattended and walked away from it. So, Mayberry "ran the risk that complete and total strangers would come upon" the bag. *Small*, 944 F.3d at 504; *Frazer*, 98 F.4th at 115 (explaining that defendant threw his bag into a public place); *see also United States v. Dickens*, 695 F.2d 765, 777–78 (3d Cir. 1982) ("Expecting privacy in a building staircase accessible to other tenants and the general public cannot be considered reasonable."), *abrogated on other grounds as recognized in In re Grand Jury Empaneling of Special Grand Jury*, 171 F.3d 826, 828 (3d Cir. 1999). These facts, of themselves, were sufficient to show that Mayberry abandoned the backpack. *See Leshuk*, 65 F.3d at 1111.

---

abandonment analysis. Mayberry's post-arrest statement was not known to officers at the time they performed the search of the backpack, and so that statement was irrelevant to the question whether Mayberry had abandoned the bag at the time it was seized. *See Small*, 944 F.3d at 502 (citations omitted). Nevertheless, as we discuss here, the admissible evidence supporting the district court's finding of abandonment compels the conclusion that the abandonment finding was not clearly erroneous. *See Ferebee*, 957 F.3d at 416.

18

Mayberry contends, nevertheless, that the district court erred in its abandonment analysis by "requiring" him to "affirmatively claim ownership of" the backpack. We disagree. The district court did not "require" Mayberry to claim ownership over the backpack to avoid an abandonment finding. Indeed, the court expressly stated that Mayberry "was *not required* to make a claim of ownership at the time of arrest."

The district court further stated that Mayberry's failure to claim ownership of the bag "properly [was] considered as one among a constellation of circumstances that … demonstrated an intent to abandon the backpack." A trial court only may consider such failure to claim ownership when that information was "available to the officers at the time they performed the warrantless search." *Small*, 944 F.3d at 502. The present record does not show whether the officers performing the search knew that Mayberry had failed to claim ownership of the backpack. Also, there is no indication when Mayberry became aware that the officers had seized his bag. *Cf. Frazer*, 98 F.4th at 114 (explaining that as the bag was being searched, the defendant "neither disclaimed ownership nor made any attempt to protect it from a search or seizure" supporting finding of voluntary abandonment). Thus, we omit from our consideration Mayberry's failure to claim ownership of the backpack, and hold that the record nonetheless supports the district court's factual finding of abandonment.

This factual finding also resolves the legal issue that Mayberry's abandonment of the backpack in a place open to the public relinquished his reasonable expectation of privacy in the bag. *See Ramapuram*, 632 F.2d at 1155. Accordingly, we hold that the

19

district court did not err in denying Mayberry's motion to suppress the search of his backpack.

III.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*